1  Thomas H. Bienert, Jr., State Bar No. 135311
   tbienert@bklwlaw.com
2  Rebecca S. Roberts, State Bar No. 225757
   rroberts@bklwlaw.com
3  **BIENERT KATZMAN**
   **LITTRELL WILLIAMS LLP**
4  903 Calle Amanecer, Suite 350
5  San Clemente, California 92673
   Telephone (949) 369-3700
6  Facsimile  (949) 369-3701

7  *Additional counsel on next page*

8  *Attorneys for Defendants*
9  Veolia Water West Operating Services, Inc., Veolia Water
10 North America-West, LLC, and Mark Wippler

11

12              **IN THE UNITED STATES DISTRICT COURT**

13           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14

15 VON BARON PARTLOW, DONALD          Case No.  **'24CV2162 W    AHG**
   JOSEPH FALLON, CARLOS ALBERTO
16 BARRIOS, SHANNON DEE O'HARA,       **DEFENDANTS' JOINT NOTICE OF**
   ALBERT SANCHEZ PARRA, ANGELINA     **REMOVAL**
17 FRANCO PARRA, JUSTIN IVAN
   RIVERA, DANIEL JAMES RYAN,         [28 U.S.C. Sections 1331, 1332, 1441,
18 JENNIFER LEE RYAN,                 1442, and 1446]
19
                                      Removed From San Diego Superior Court
20        Plaintiff,                  Case No. 24CU017279C
21 v.                                 Action Filed:  October 15, 2024
22 VEOLIA WATER WEST OPERATING        Trial Date:    None Set
   SERVICES, INC., VEOLIA WATER
23 NORTH AMERICA-WEST, LLC, MARK
   WIPPLER, AN INDIVIDUAL, and does 1-
24 200, inclusive,
25
          Defendants.
26

27

28

---

Matthew D. Ingber, *pro hac vice* application forthcoming
mingber@mayerbrown.com
**MAYER BROWN, LLP**
1221 Ave. of the Americas
New York, New York 10020
Telephone (212) 506-2373

Michael Olsen, *pro hac vice* application forthcoming
molsen@mayerbrown.com
Telephone (312) 701-7120
Avi M. Kupfer, *pro hac vice* application forthcoming
akupfer@mayerbrown.com
Telephone (312) 701-8330
**MAYER BROWN, LLP**
71 S. Wacker Drive
Chicago, Illinois 60606

Nicole A. Saharsky*, pro hac vice* application forthcoming
*nsaharsky@mayerbrown.com*
**MAYER BROWN, LLP**
*1999 K Street, N.W.*
*Washington, DC 20006*
Telephone (202) 263-3052

DEFENDANTS' JOINT NOTICE OF REMOVAL

# TABLE OF CONTENTS

I.  PROCEDURAL BACKGROUND ...........................................................................1

II.  NATURE OF THE CASE ...................................................................................2

III.  GROUNDS FOR REMOVAL ...........................................................................6

    A.  Federal Officer Removal ..........................................................................6

        1.  Veolia is a "person" under Section 1442(a)(1). ...................................7

        2.  The case is for or relating to Veolia's actions under color of federal office. ..........................................................................7

        3.  Veolia has a colorable federal defense. ............................................11

    B.  Federal Enclave Removal ........................................................................13

    C.  Fraudulent Joinder ..................................................................................14

        1.  The amount in controversy exceeds the sum of $75,000. .................14

        2.  Complete diversity of citizenship exists. ...........................................15

IV.  CONCLUSION................................................................................................17

DEFENDANTS' JOINT NOTICE OF REMOVAL

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Agyin v. Razmzan,*
　　986 F.3d 168 (2d Cir. 2021) ........................................................................ 13

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009) ............................................................................... 13, 17

*Baker v. Atl. Richfield Co.,*
　　962 F.3d 937 (7th Cir. 2020) ........................................................................ 7

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
　　574 U.S. 81 (2014) ...................................................................................... 13

*Durham v. Lockheed Martin Corp.,*
　　445 F.3d 1247 (9th Cir. 2006) ................................................................. 7, 13

*Ft. Leavenworth R. Co. v. Lowe,*
　　114 U.S. 525 (1885) ...................................................................................... 13

*Golden ex rel. Golden v. Golden,*
　　382 F.3d 348 (3d Cir. 2004) .......................................................................... 15

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego,*
　　865 F.3d 1237 (9th Cir. 2017) ........................................................................ 7

*Guillory v. PPG Indus., Inc.,*
　　434 F.3d 303 (5th Cir. 2005) ........................................................................ 16

*Huber v. Taylor,*
　　532 F.3d 237 (3rd Cir. 2008) ........................................................................ 15

*Jefferson Cnty. v. Acker,*
　　527 U.S. 423 (1999) ...................................................................................... 11

*Leite v. Crane Co.,*
　　749 F.3d 1117 (9th Cir. 2014) ........................................................................ 13

ii

*Linnin v. Michielsens,*
  372 F. Supp. 2d 811 (E.D. Va. 2005) ................................................................. 16

*Moore v. Elec. Boat Corp.,*
  25 F.4th 30 (1st Cir. 2022) ............................................................................... 11

*O'Hara v. Teamsters Union. Loc. No. 856,* 151 F.3d 1152 (9th Cir. 1998) .................... 16

*Pool v. AmeriPark, LLC,*
  2020 WL 9048837 (S.D. Cal. Mar. 20, 2020) ................................................... 14

*Rojas v. Sea World Parks & Ent., Inc.,*
  538 F. Supp. 3d 1008 (S.D. Cal. 2021) ............................................................ 16

*Colorado v. Symes,*
  286 U.S. 510 (1932) ............................................................................................ 7

*City of Imperial Beach v. IBWC,*
  356 F. Supp. 3d 1006 (S.D. Cal. 2018) ......................................................... 3, 4

*Watson v. Philip Morris Companies, Inc.,*
  551 U.S. 142 (2007) ............................................................................................ 7

*Whisnant v. United States,*
  400 F.3d 1177 (9th Cir. 2005) ......................................................................... 12

*Willingham v. Morgan,*
  395 U.S. 402 (1969) .......................................................................................... 11

*Yearsley v. W.A. Ross Construction Company,*
  309 U.S. 18 (1940) ............................................................................................ 11

**Statutes**

22 U.S.C. § 277d-43(3) .......................................................................................... 12

28 U.S.C. §1446(d) ................................................................................................... 2

28 U.S.C. § 1332 ............................................................................................... 14, 16

28 U.S.C. § 1346(b)(1) .......................................................................................... 12

iii

28 U.S.C. § 1441 ................................................................................................ 14

28 U.S.C. § 1441(a) ........................................................................................... 14

28 U.S.C. § 1446(a) ............................................................................................. 1

28 U.S.C. § 1446(b)(1) ........................................................................................ 1

29 U.S.C. § 1442(a)(1) ........................................................................................ 8

Cal. Water Code § 179 ........................................................................................ 5

California Health and Safety Code § 5411 .......................................................... 6

Pub. L. No. 100-4, Sec. 510(a), (b), (d), 101 Stat. 7, 80-81 ............................. 12

Pub. L. No. 116-113, 134 Stat. 11, 100 (2020) .............................................. 6, 11

Section 1442(a)(1) ........................................................................................... 6, 7

**Rules**

California Rules of Court 2.251 ........................................................................... 1
Rule 12 of the Federal Rules of Civil Procedure ................................................ 2

**Regulations**

54 Fed. Reg. 40664 (Oct. 3, 1989) ...................................................................... 5

DEFENDANTS' JOINT NOTICE OF REMOVAL

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446, Defendants Veolia Water West Operating Services, Inc., Veolia Water North America-West, LLC (collectively, "Veolia"), and Mark Wippler ("Mr. Wippler") (collectively, with Veolia, "Defendants") remove to this Court the civil action entitled *Von Baron Partlow, et al. v. Veolia Water West Operating Services, Inc., et al.* (the "Action"), previously pending in the Superior Court of the State of California, County of San Diego – Central District, Department 69, located at Hall of Justice, 330 West Broadway, San Diego, CA 92101 as Case No. 24CU017279C. Defendants remove the Action on the following grounds:

## I.    PROCEDURAL BACKGROUND

1.    On October 15, 2024, Plaintiffs Von Baron Partlow, Donald Joseph Fallon, Carlos Alberto Barrios, Shannon Dee O'Hara, Albert Sanchez Parra, Angelina Franco Parra, Justin Ivan Rivera, Daniel James Ryan, and Jennifer Lee Ryan (collectively, "Plaintiffs") filed a complaint in the Superior Court of the State of California, County of San Diego – Central District, commencing the Action. Copies of the Summons and Complaint ("Compl.") are attached to this notice of removal ("Notice of Removal") as Exhibits 1 and 2, respectively.

2.    On October 18, 2024, Plaintiffs personally served Veolia's registered agent.

3.    On October 22, 2024, Plaintiffs personally served Mr. Wippler.

4.    Pursuant to 28 U.S.C. § 1446(a), the state court file will be transmitted to this Court.

5.    Defendants filed this Notice of Removal within thirty (30) days from the date Veolia was served with the Summons and Complaint. Accordingly, this removal is timely. 28 U.S.C. § 1446(b)(1).

6.    To Defendants' knowledge, no other defendant has been served or named.

7.    Defendants will provide written notice of this Notice of Removal to Plaintiffs and any other adverse parties as required by 28 U.S.C. §1446(d) and will file a copy of this Notice of Removal with the Superior Court of California, County of San Diego.

8.    Venue is proper in this Court because the Action is being removed from the Superior Court for the State of California in San Diego County.

9.    By removing the Action to this Court, Defendants do not waive any defenses, objections, or motions available under state or federal law. Defendants expressly reserve the right to move for dismissal of Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure and/or seek dismissal on grounds of lack of jurisdiction, improper venue, or under the doctrine of *forum non conveniens*.

## II.    NATURE OF THE CASE

10.    This case concerns a cross-border environmental issue caused by millions of gallons of untreated sewage daily entering into the United States from Tijuana, Mexico. These flows originate in Mexico, not the United States.

11.    The Tijuana River watershed covers 1,750 square miles in San Diego County and northern Baja California in Mexico and includes the city of Tijuana. U.S. Env't Prot. Agency & U.S. Section, Int'l Boundary and Water Comm'n, *Final Programmatic Environmental Impact Statement, USMCA Mitigation of Contaminated Transboundary Flows Project* 1-1 (Nov. 2, 2022) ("EIS"), https://www.epa.gov/system/files/documents/2022-11/Programmatic%20Environmental%20Impact%20Statement.pdf.  The watershed converges in the Tijuana River, which originates in Mexico and flows northwest, crossing into the United States and discharging to the Pacific Ocean south of Imperial Beach. *Id.* at 1-1 to 1-2. The Tijuana River has several canyon tributaries. *Id.* at 3-6.

12.    Constant transboundary flows in the Tijuana River watershed bring untreated sewage, trash, and sediment into the United States from Mexico. *Id.* at xxi. The primary culprit is Tijuana's dilapidated wastewater collection and treatment system, which in recent years has allowed at least 10 million gallons of sewage per day to escape and flow into the Tijuana River, where it then enters the United States and flows into the Pacific Ocean. *Id.*

at 1-13. In addition, a major Tijuana plant that is designed to treat wastewater before discharging it into the Pacific Ocean via the San Antonio de los Buenos Creek currently discharges sewage without treating it at all. *Id.* at 1-8, 1-12; *see also id.* at 3-24 (discussing a study finding that the Creek is "the predominant cause of modeled beach impacts at Imperial Beach during the tourist (dry) season"). Recent population growth in Mexico has exacerbated these issues by increasing the volume of transboundary flows. *Id.* at 1-3, 1-14.

13.    The International Boundary and Water Commission ("IBWC") is a binational body comprised of an American section ("USIBWC") and a Mexican section. The USIBWC is a federal agency. The sections exercise rights and obligations under a treaty between the United States and Mexico that addresses issues related to the use, ownership, and sanitary treatment of water on the border. Treaty Respecting Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande, U.S.-Mex., Feb. 3, 1944, 59 Stat. 1219 ("1944 Treaty"). Waterworks that the countries construct, acquire, or use to fulfill the treaty's purpose are "under the exclusive jurisdiction and control of the Section of the [IBWC] in whose country the works may be situated." *Id.* Art. 2.

14.    In 1990, the IBWC agreed to take certain measures to address sanitation issues caused by sewage entering into the United States from Tijuana.  *See* IBWC, Minute No. 283 at 5-9 (July 2, 1990) ("Minute 283"), https://www.ibwc.gov/wp-content/uploads/2023/05/Min283.pdf. The agreement requires that the Mexican section ensure that there are no sewage discharges "into waters of the Tijuana River that cross the international boundary." *Id.* at 8 ¶ 16. Mexico must "immediately stop . . . discharges" caused by "a breakdown in [sewage] collection or other detention facilities" and to "immediately . . . make repairs." *Id.*

15.    The agreement also led to the construction of the South Bay International Wastewater Treatment Plant ("SBIWTP" or "Plant"), which is owned by the USIBWC and located 1.3 miles west of where the Tijuana River enters into the United States. *City of Imperial Beach v. IBWC*, 356 F. Supp. 3d 1006, 1011-12 (S.D. Cal. 2018); EIS 1-5.

16.    The SBIWTP was designed to treat 25 million gallons of sewage per day that exceeds the capacity of wastewater facilities in Mexico. *IBWC*, 356 F. Supp. 3d at 1012.

The sewage is conveyed to the plant from two sources. Most of the sewage comes from the "International Collector," a cross-border sewer line controlled in Mexico that diverts wastewater from downtown Tijuana that otherwise would flow into the Tijuana River. *See* EIS 1-5 to 1-8. A much smaller amount of sewage comes from five USIBWC-owned diversion structures in the canyon tributaries along the border (*i.e.*, "canyon collectors") that are intended to "divert incidental releases of wastewater from Tijuana" that flow into the United States. San Diego Region, Cal. Reg'l Water Quality Control Bd., *Executive Officer's Report* 7 (Nov. 13, 2024) ("Executive Officer's November 2024 Report"), https://waterboards.ca.gov/sandiego/publications_forms/publications/docs/executive_offic er_reports/2024/eor_11_13_2024.pdf; EIS 1-5.

17.    A diagram of the Plant is below:



EIS 1-11.

18.    The Plant does not treat sewage from or discharge sewage into the Tijuana River. *See IBWC*, 356 F. Supp. 3d at 1012; EIS 1-11. However, the International Collector in Mexico "frequently malfunctions," which allows sewage to flow directly into the Tijuana River. *IBWC*, 356 F. Supp. 3d at 1012. In addition, "wastewater collection system

deficiencies in Tijuana" have resulted in a constant stream of sewage to the canyon collectors, which are not intended "to be a default collection system for continuous flows" from Mexico. Executive Officer's November 2024 Report 7. For example, sewage flows from Tijuana recently have carried large amounts of sediment from a Mexican construction site on the border to two of the canyon collectors. Status Report 3, ECF No. 29, *San Diego Coastkeeper v. USIBWC*, No. 3:24-cv-663 (S.D. Cal. Oct. 15, 2024) ("Status Report"). That has resulted in damage to the Plant's sewage-treatment equipment. *Id.* The USIBWC thus has occasionally decided to shut off water flow from the collectors to the Plant to prevent the destruction of equipment, which has caused wastewater from Tijuana to pool near the collectors. *See, e.g.*, Executive Officer's November 2024 Report 2, 7.

19.    A National Pollutant Discharge Elimination System ("NPDES") permit authorizes the USIBWC to discharge the treated effluent through the South Bay Ocean Outfall into the Pacific Ocean 3.5 miles offshore. *See generally* Exhibit 3 ("Ex. 3"). The permit was issued by the Regional Water Quality Control Board, San Diego Region through authority delegated to it by the Environmental Protection Agency. *See id.* at 3-4; Approval of California's Revisions to the State National Pollutant Discharge Elimination System Program, 54 Fed. Reg. 40664 (Oct. 3, 1989); Cal. Water Code § 179.

20.    Since 1997, the USIBWC has contracted with Veolia to operate and maintain the Plant. *See generally* Exhibit 4 ("Ex. 4") (current contract between USIBWC and Veolia Water West Operating Services). As the Plant owner and permitholder, USIBWC has ultimate decision-making authority for Plant operations, including whether to shut off water flow from the canyon collectors to the Plant. USIBWC—not Veolia—thus controls all decisions relevant to water discharge and permit compliance. *See, e.g.*, *San Diego Regional Water Quality Control Board May Meeting* 1:13:55-1:14:20, YouTube, https://www.youtube.com/watch?v=fLelgalO9GY (May 8, 2024 comment from USIBWC Commissioner that "I am intimately involved in . . . every single activity related to" permit compliance and "I am not delegating this"); Executive Officer's November 2024 Report 2, 7, 12. For example, the USIBWC is responsible for "clean[ing] and repair[ing]" the canyon

collectors and other Plant facilities. Status Report 3. Further, Veolia may recommend repairs and improvements to the Plant but the USIBWC's approval is required for anything that exceeds $100,000. Ex. 4 at C-17 ¶ c(9).[1]

21.    Mr. Wippler is a Veolia employee. In July 2022, the USIBWC approved Mr. Wippler's appointment as SBIWTP Plant Supervisor.

22.    Neither Veolia nor Mr. Wippler are parties to the NPDES permit. Instead, USIBWC—the United States federal agency—is listed as the sole discharger. *See* Ex. 3.

23.    Plaintiffs allege claims against Defendants for negligence, public and private nuisance, trespass, battery, and a violation of California Health and Safety Code § 5411 because of their alleged role in operating the Plant.

## III.    GROUNDS FOR REMOVAL

### A.    Federal Officer Removal

24.    Under 28 U.S.C. § 1442(a)(1), a lawsuit "for or relating to" the action of "any person acting . . . under color of [federal] office" may be removed to federal court. This case is removable on federal officer grounds because it relates to Veolia's operation of the Plant under the USIBWC.

25.    Section 1442(a)(1) provides that a defendant acting under the direction of a federal officer may remove an action from state to federal court if (1) it is a "person" within

---

[1]    A number of recent federal actions are aimed at improving water management at the border. In 2020, Congress appropriated $300 million to construct additional wastewater treatment facilities. United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11, 100 (2020). In 2023, the USIBWC set aside $18 million for interim repairs, which are mostly completed. *See* San Diego Region, Cal. Reg'l Water Quality Control Bd., *Tijuana River Sewage Flows and Pending Remediation* 2 (Oct. 11, 2023), https://www.waterboards.ca.gov/sandiego/water_issues/programs/tijuana_river_valley_strategy/docs/tijuana_river_pollution_update_10112023.pdf. And in 2024, the USIBWC awarded a design contract to double the Plant's treatment capacity and began making repairs to protect Plant equipment from flooding. *See* Int'l Boundary and Water Comm'n, *USIBWC, Partners Celebrate Launch of South Bay Plant Rehabilitation and Expansion* 1 (Oct. 29, 2024), https://www.ibwc.gov/wp-content/uploads/2024/10/USIBWC-Partners-Celebrate-Launch-of-South-Bay-Plant-Rehabilitation-and-Expansion.pdf. Additional wastewater infrastructure repairs in Mexico also are progressing. Executive Officer's November 2024 Report 3-5.

the meaning of the statute, (2) the case is "for or relating to" the removing defendant's federal action, and (3) the defendant can assert a colorable federal defense. 28 U.S.C. § 1442(a)(1); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). These requirements are "'liberally construed' . . . broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). Defendants readily satisfy the requirements.

### *1.* **Veolia is a "person" under Section 1442(a)(1).**

26.   Veolia is a person within the meaning of the statute. *See, e.g.*, *Goncalves*, 865 F.3d at 1244 ("[C]orporations are 'persons' under § 1442(a)(1).").

### *2.* **The case is for or relating to Veolia's actions under color of federal office.**

27.   Under the second prong of the federal officer removal test—which erects a hurdle that is "quite low," *Goncalves*, 865 F.3d at 1244—the requisite nexus exists whenever the case is "relating to" an entity's "effort to *assist*, or help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007). Removal is available in actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020).

28.   The SBIWTP is a wastewater treatment facility that the federal government built to treat limited sewage flows along the Mexican border and to prevent harm from those flows to nearby community members. Compl. ¶¶ 3, 19.

29.   Veolia assists the USIBWC in carrying out its duties and operates under the USIBWC's direct supervision.  Plaintiffs allege that "[t]o manage the Plant, [US]IBWC hired Defendants." Compl. ¶ 17.  Since 1997, the USIBWC has contracted with Veolia to assist the USIBWC in operating the Plant. In doing so, Veolia assists the USIBWC with a basic governmental task—treating wastewater—that it would have to perform on its own had it not contracted with Veolia to operate the plant. *See* EPA, *Municipal Wastewater*,

https://www.epa.gov/npdes/municipal-wastewater (Apr. 19, 2024). Veolia's responsibilities under the contract include providing labor, material, and other resources required to operate and maintain the Plant and its facilities. *See* Ex. 4 at C-1. Veolia has carried out those responsibilities by providing day-to-day planning, administration, and personnel for Plant operations, which include influent and effluent sampling and laboratory testing; equipment and vehicle operation and maintenance; system monitoring and operation; data recording and reporting; capital improvements; housekeeping; grounds maintenance; supplying consumables including chemicals; and other services related to the operation and maintenance of the SBIWTP. *See id.* at C-1.

30.    Plaintiffs allege they have suffered harm due to the unlawful discharge of untreated sewage into the Tijuana River and Estuary and the Pacific Ocean, caused by Defendants' alleged negligent operation and maintenance of the Plant and its facilities. Compl. ¶¶ 1-5, 24, 26, 27, 32, 30 (alleging "that the level of toxic waste and pollution in the Tijuana River has increased tenfold over the last three years, the consequences of which has been exacerbated dramatically by Defendants' mismanagement of SBIWTP."). These allegations directly "relat[e] to" Veolia's above "act[s] under color of" the USIBWC. 29 U.S.C. § 1442(a)(1). Plaintiffs allege a variety of harms that purportedly "resulted" from Veolia's "actions and inactions" in operating the Plant that caused the "discharge [of] pollutants . . . into the Tijuana River and Estuary, and the Pacific Ocean." Compl. ¶¶ 2, 4-5; *see also, e.g., id.* ¶ 38 (alleging that Veolia did not "operate, manage, and maintain the Plant and related infrastructure in a way that would prevent the discharge" of sewage); *id.* ¶ 66 (alleging that Veolia discharged sewage "into the water in Imperial Beach from its facilities").

31.    The USIBWC is the ultimate decisionmaker that Veolia acts under to assist in operating the Plant.  At all relevant times, Veolia performed the contract as directed by the USIBWC. The USIBWC-Veolia contract makes this clear: "[T]he SBIWTP is operated under the authority of the United States Section, International Boundary and Water Commission (USIBWC)." Ex. 4 at C-1. Indeed, "[a]ll land, building improvements, and

permanent equipment, which are in place at the time of contract commencement, is the property of the Government." *Id.* at C-15. The USIBWC exercises significant guidance and supervision over Veolia. According to USIBWC Commissioner Dr. Maria Giner, she is "intimately involved in . . . every single activity related to" NPDES permit compliance and the USIBWC is "not delegating this." *San Diego Regional Water Quality Control Board May Meeting* 1:13:55-1:14:20, YouTube, https://www.youtube.com/watch?v=fLelgalO9GY (May 8, 2024).

32.     Veolia also operates under the close direction and control of the USIBWC in its regular operation and maintenance of the Plant such that Veolia acts solely at the USIBWC's direction. The USIBWC's contracting officer has final approval authority for Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, and the Plant's safety plan and emergency preparedness plan. Ex. 4 at C-5, C-10, C-11, C-12, C-28. Veolia's personnel cannot "[b]e placed in a position of command, supervision, administration or control over USIBWC personnel." *Id.* at p.15 § H.02. All Veolia "personnel [are] . . . required to obtain access authorization from the USIBWC . . . prior to entering the SBIWTP and facilities." *Id.* at C-8. Veolia also "shall not divert or otherwise replace any key personnel without the written consent of the [USIBWC's] Contracting Officer" and "[t]he Contracting Officer's decision in regards to replacement . . . shall be final. *Id.* at C-10. The USIBWC also limits the maximum number of hours that Veolia personnel can work: "ten (10) hours per day." *Id.* at C-11. Finally, the USIBWC may "require" that Veolia "remove from the work place any employee the [USIBWC] deems incompetent, careless, a conflict of interest or otherwise objectionable." *Id.* at C-12. The contracting officer also has discretion to issue stop-work orders. *Id.* at p.12 § 52.242-15.

33.     The contract also makes clear that only the USIBWC has authority to approve and fund "major repairs, refurbishments, replacements, and upgrades in future years." *Id.* at C-17. Veolia's scope of work only includes "repairs, refurbishments, replacements, or upgrades under $100,000." *Id.* Any work above this amount is outside Veolia's scope and requires USIBWC's approval. *See id.*

34.     The USIBWC and Veolia also regularly communicate regarding management and operation of the SBIWTP.  For example, Veolia inspects the canyon collectors daily and then relays its observations to the USIBWC via a form template created by the government. *See* Exhibit 5 ("Ex. 5"). Veolia regularly performs reports required under the NPDES permit and transmits these reports to the USIBWC for transmission to its regulator.

35.     The USIBWC also closely monitors and oversees Veolia's work and the procedures at the plant. Veolia was provided with a "document [that] covers the Sequence of Operation (SOO) in place to run and maintain the plant." Exhibit 6 ("Ex. 6") at 1. For example, among other specific procedures, this document provides the "standard operating procedure for the start-up and shutdown of the Headworks for the South Bay International Wastewater Treatment Plant." *Id.* at 14.

36.     The USIBWC, not Veolia, determines whether actions like shutting off water flow from the canyon collectors to the Plant are necessary to prevent damage because of unforeseen events like excessive sediment flows. *See* Executive Officer's November 2024 Report 2, 7. Veolia thus defers to the USIBWC on such decisions relevant to water discharge and permit compliance.

37.     Furthermore, managing foreign relations is a task reserved for the federal government.  Since the Plant is located on an international border, foreign relations issues often arise. The USIBWC is "responsible for coordination with Mexico, conducting bi-national meetings, and providing information to and from Mexico." Ex. 4 at C-15. Indeed, such foreign communications are critical because the Mexican government is obligated to perform certain tasks to uphold its end of the bargain under the binational IBWC.  Minute 283 at 7-9.

38.     Finally, because the Plant is a federal facility, decisions regarding funding and appropriations for this Plant and the conditions surrounding it are outside of Veolia's control. Congress has appropriated $300 million toward wastewater improvements at the border and the USIBWC has awarded a design contract to double the Plant's treatment capacity and began making repairs to protect equipment from flooding to address

transboundary pollution. *See* Int'l Boundary and Water Comm'n, *USIBWC, Partners Celebrate Launch of South Bay Plant Rehabilitation and Expansion* 1 (October 29, 2024), https://www.ibwc.gov/wp-content/uploads/2024/10/USIBWC-Partners-Celebrate-Launch-of-South-Bay-Plant-Rehabilitation-and-Expansion.pdf; Pub. L. 116-113, 134 Stat. 100 (Jan. 29, 2020). For all these reasons, the second prong for federal officer removal is satisfied.

### 3.   Veolia has a colorable federal defense.

39.    The *Yearsley* doctrine provides Veolia with a colorable defense of derivative sovereign immunity. At the removal stage, a defendant need only show that its federal defense is colorable. The Supreme Court has "rejected a narrow, grudging interpretation" of the "colorable federal defense requirement." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (internal quotations omitted); *see Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (A defendant "need not win his case before he can have it removed."). A federal defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotations omitted).

40.    Under the *Yearsley* doctrine, a government contractor defendant is not liable on derivative sovereign immunity grounds if: (1) the government's sovereign immunity has not been waived; (2) the authority to carry out the contract is validly conferred; and (3) the contractor performed the contract as directed by the government. *Yearsley v. W.A. Ross Construction Company*, 309 U.S. 18, 20-21 (1940). Veolia satisfies those requirements for purposes of removal.

41.    First, the USIBWC is a federal agency immune from liability for Plaintiffs' claims with respect to its ownership and operations of the Plant. The USIBWC's immunity has not been waived.

42.    The Federal Torts Claims Act ("FTCA") has not waived the USIBWC's immunity from suit. The FTCA contains a limited waiver of sovereign immunity for "injury or loss of property . . . caused by the negligent or wrongful act or omission" of a federal

government employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). But that waiver contains a number of exceptions, including the discretionary-function exception. That exception is satisfied when the acts alleged to be negligent or wrongful are discretionary, in that they were not "governed by a mandatory statute, policy, or regulation" and the judgment or choice in question "is of the type Congress meant to protect—i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis." *Whisnant v. United States*, 400 F.3d 1177, 1180-81 (9th Cir. 2005).

43.    That exception applies here. The USIBWC is given wide discretion in terms of its management of the Plant. The 1944 Treaty authorizes the USIBWC to "operate and maintain" "agreed upon . . . works" in accordance with law. 1944 Treaty Art. 24(b). Congress specifically authorized the USIBWC "to operate and maintain any treatment works constructed" to "provide primary or more advanced treatment of municipal sewage and industrial waste from Mexico" to "protect the economy, public health, environment, surface water and public beaches and water quality of the city of San Diego, California, and surrounding areas." Water Quality Control Act of 1987, Pub. L. No. 100-4, Sec. 510(a), (b), (d), 101 Stat. 7, 80-81; *see* 22 U.S.C. § 277d-43(3). Accordingly, the USIBWC has broad discretion to operate the Plant to protect the economy, public health, the environment, and water quality.

44.    The NPDES permit does not circumscribe that authority. The permit vests the USIBWC with the authority to "take all reasonable steps to minimize or prevent any discharge . . . that has a reasonable likelihood of adversely affecting human health or the environment." Ex. 3 at D-1. And the permit also allows for the USIBWC to intentionally divert "waste streams from" the Plant facilities if doing so will "prevent loss of life, personal injury, or severe property damage." *Id.* at D-2, D-3. Such authority is consistent with the broad discretion Congress has afforded the USIBWC "to protect the economy, public health, environment, surface water and public beaches, and water quality of the city of San

Diego, California, and surrounding areas, which are endangered and are being polluted by raw sewage emanating from the city of Tijuana, Mexico." 101 Stat. at 80.

45.    Second, the USIBWC's contract with Veolia is validly conferred because the 1944 Treaty provides that the USIBWC "may make use of any competent public or private agencies in accordance with the laws" of the United States. Art. 20.

46.    Third, as explained above, Veolia has operated and continues to operate the Plant following the USIBWC's specific guidance and direction in accordance with the terms of the contract. The USIBWC has ultimate authority over all activities at the Plant. Indeed, Veolia is in constant (near daily) communication with the USIBWC regarding Plant operations and management.

47.    Plaintiffs allege on "inform[ation] and belie[f]" that Veolia "may [not] rely on any derivative governmental immunity" defense because it "failed . . . to comply with its contract with the United States (IBWC)." Compl. ¶ 27. But such "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Regardless, a removal notice need contain only "plausible allegation[s]" that Veolia performed the contract as directed by the USIBWC, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), which the Court must "credit," *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014); *see Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021). Here, Veolia has plausibly alleged facts showing that it has a colorable derivative sovereign immunity defense.

### B.    Federal Enclave Removal

48.    "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). Land is a federal enclave when it is "used as a means to carry out the purposes of the government." *Ft. Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 531 (1885).

49.    Here, as explained above, the Plant is operated on the very edge of the U.S.-Mexico border and is owned and controlled by a federal agency—the USIBWC. *See*

Compl. ¶¶ 3, 19. Plaintiffs' claims rise from Defendants' alleged operation of the USIBWC-owned wastewater treatment plant within a federal enclave. Compl. ¶¶ 17-19 ("The SBIWTP was designed to deal with the growing demand for the treatment of wastewater resulting in the contamination of the Tijuana River Estuary in the United States as well as the Pacific Ocean within the United States' territorial seas.")

50.    The Plant is on federal land over which the federal government has exclusive sovereignty.  California has no authority over the land on which the Plant sits. California's authority is limited to regulating the Plant's discharges through the Regional Water Quality Control Board, San Diego Region, but California does not have authority over the underlying land. Because Plaintiffs' claims arose from Plant operations on a federal enclave, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, and removal is proper under 28 U.S.C. § 1441(a).

**C.    Fraudulent Joinder**

51.    The action is a civil action over which the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The action is removable pursuant to 28 U.S.C. § 1441 under a fraudulent joinder theory, because this is a civil action in which there is complete diversity of citizenship between Plaintiffs and Veolia and the amount in controversy exceeds $75,000.

*1.*    **The amount in controversy exceeds the sum of $75,000.**

52.    Plaintiffs' allegations make it facially apparent that the amount in controversy exceeds $75,000. To satisfy state court jurisdictional requirements, the complaint alleges that amount in controversy "exceeds $35,000." Compl. ¶ 10. The Court may apply "judicial experience and common sense" to conclude that the complaint makes "apparent" that the case also satisfies the $75,000 threshold for federal diversity jurisdiction. *Pool v. AmeriPark, LLC*, 2020 WL 9048837, at *2 (S.D. Cal. Mar. 20, 2020).

53.    Here, Plaintiffs allege a lengthy list of damages, including a request for punitive damages.  Claims for punitive damages made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that

the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008) (emphasis removed) (quoting *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004)).  Plaintiffs allege that "for decades" and "since 2018" the residents and neighbors of the City of Imperial Beach have suffered a variety of injuries due to exposure to raw sewage. Compl. ¶¶ 17, 25. The nine named Plaintiffs are presently seeking damages for alleged (i) general and special damages; (ii) loss of use, benefit, goodwill, and enjoyment of real and personal property; (iii) loss of wages, earning capacity, goodwill, and/or business profits or proceeds and related displacement expenses; (iv) out of pocket costs; (v) damage to real and personal property; (vi) past and future medical expenses and incidental expenses; (vii) general damages for personal injury, emotional distress, fear annoyance, disturbance, inconvenience, mental anguish, and loss of quiet enjoyment of property; (viii) prejudgment interest; and (ix) punitive and exemplary damages, in addition to any other relief the Court deems proper. Compl. at p. 20. Given the extended time period and breadth of alleged injuries, the controversy easily exceeds $75,000.

### 2.    Complete diversity of citizenship exists.

54.    Complete diversity of citizenship existed at the time of filing of this Action and at the time of filing of this Notice of Removal.  Plaintiffs are all owners and/or residents of properties located in or near Imperial Beach, County of San Diego, State of California. Compl. ¶ 12.

55.    Defendant Veolia Water West Operating Services, Inc. is a corporation incorporated under the laws of the State of Delaware and has its principal place of business in the State of Massachusetts.

56.    Defendant Veolia Water North America-West, LLC is a citizen of Delaware. Defendant Veolia Water North America-West, LLC's sole member is Veolia Water Municipal Services North America, LLC, which is a citizen of Delaware.

57.    The Complaint also names Defendant Mark Wippler, who is a citizen of the same state as Plaintiffs. Mr. Wippler's citizenship should be disregarded for purposes of

determining jurisdiction under 28 U.S.C. §§ 1332 and 1441(b) under the doctrine of fraudulent joinder. "The Ninth Circuit has established that fraudulent joinder arises where either (1) actual fraud exists in the pleading of jurisdictional facts or (2) the plaintiff is unable to establish a cause of action against the non-diverse party in state court," meaning that "a party may show fraudulent joinder by proving that an individual joined in the action cannot be liable on any theory." *Rojas v. Sea World Parks & Ent., Inc.*, 538 F. Supp. 3d 1008, 1024-25 (S.D. Cal. 2021) (internal quotations omitted).

58.    Mr. Wippler should be disregarded for purpose of determining jurisdiction because his naming as a defendant "logically can only serve to destroy diversity." *Rojas*, 538 F. Supp. 3d at 1027. The Ninth Circuit has held that "a broad definition of 'within the scope of employment' ensures that third parties injured by an employee have a remedy against a party that is more likely to be able to pay a judgment—i.e., employers—under the theory of respondeat superior." *O'Hara v. Teamsters Union. Loc. No. 856*, 151 F.3d 1152, 1158 (9th Cir. 1998). Here, Mr. Wippler was "acting within the course and scope of his employment" at the time of plaintiffs' alleged injuries, and accordingly plaintiffs "lack[] a true intent to obtain a judgment against [him]." *Rojas*, 538 F. Supp. 3d at 1028; *see Linnin v. Michielsens*, 372 F. Supp. 2d 811, 823-25 (E.D. Va. 2005) (denying remand under fraudulent joinder doctrine because "[p]laintiff ha[d] no real intention of getting a joint judgment as to [the individual defendants]" (internal quotations omitted)); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005).

59.    The complaint contains no allegations to the contrary. Indeed, the only factual allegation about Mr. Wippler is an "inform[ation] and belie[f]" allegation that he did not "comply with [the] contract with the . . . [US]IBWC." Compl. ¶ 27. But Mr. Wippler is not a party to the Veolia-USIBWC contract. *See* Ex. 4 at p. 1. It is clear that the only reason Plaintiffs named Mr. Wippler was to try to defeat diversity jurisdiction and that they have no real intention of pursuing a joint judgment. Further, Plaintiffs' "[t]hreadbare recitals of the elements of a cause of action" against Mr. Wippler "supported by mere conclusory

statements," are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Plaintiffs thus have not stated a cause of action against a non-diverse party.

## IV.    CONCLUSION

For the reasons set forth above, Defendants remove the Action from the Superior Court for the State of California, County of San Diego to this Court.

Dated:  November 18, 2024

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: */s/ Rebecca S. Roberts*
　　Thomas H. Bienert, Jr.
　　Rebecca S. Roberts

　　*Attorneys for Defendants
　　Veolia Water West Operating Services,
　　Inc. Veolia Water North America-West,
　　LLC, and Mark Wippler*

Dated:  November 18, 2024

**MAYER BROWN, LLP**

By: */s/ Avi M. Kupfer*
　　Mathew D. Ingber
　　Michael Olsen
　　Avi M. Kupfer
　　Nicole A. Saharsky

　　*Attorneys for Defendants
　　Veolia Water West Operating Services,
　　Inc. and Veolia Water North America-
　　West, LLC*

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On November 18, 2024, I served the foregoing document described as DEFENDANTS' JOINT NOTICE OF REMOVAL on all interested parties in this action listed below via the method of service as stated:

Gerald Singleton
Email: gsingleton@singletonschreiber.com
Knut S. Johnson
Email: kjohnson@sigletonschreiber.com
591 Camino de la Reina, Suite 1025
San Diego, California 92108
Tel: 619-771-3473

*Attorneys for Plaintiffs*

[X] **BY MAIL** - I deposited such envelope in the mail at San Clemente, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Orange County California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[X] **BY ELECTRONIC TRANSMISSION** - Pursuant to California Rules of Court 2.251 a PDF version of this document was transmitted from e-mail address **medwards@bklwlaw.com** to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 18, 2024, at San Clemente, California.

*/s/ Miriah Edwards*
Miriah Edwards