**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
THOMAS H. BIENERT, Jr., SBN 135311
*tbienert@bklwlaw.com*
REBECCA S. ROBERTS, SBN 225757
*rroberts@bklwlaw.com*
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*Attorneys for Defendants Veolia Water*
*West Operating Services, Inc. and Veolia*
*Water North America-West, LLC*

**MAYER BROWN LLP**
MATTHEW D. INGBER, NYBN 2964666
(*pro hac vice*)
*mingber@mayerbrown.com*
BENJAMIN D. BRIGHT, NYBN 5413596
(*pro hac vice*)
*bbright@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

NICOLE A. SAHARSKY, DCBN 495433
(*pro hac vice*)
*nsaharsky@mayerbrown.com*
MINH NGUYEN-DANG, SBN 312031
*mnguyen-dang@mayerbrown.com*
1999 K Street NW
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

MICHAEL A. OLSEN, ILBN 6237807
(*pro hac vice*)
*molsen@mayerbrown.com*
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VON BARON PARTLOW, DONALD JOSEPH FALLON, CARLOS ALBERTO BARRIOS, SHANNON DEE O'HARA, ALBERT SANCHEZ PARRA, ANGELINA FRANCO PARRA, JUSTIN IVAN RIVERA, DANIEL JAMES RYAN, and JENNIFER LEE RYAN,<br><br>Plaintiffs,<br><br>v.<br><br>VEOLIA WATER WEST OPERATING SERVICES, INC., VEOLIA WATER NORTH AMERICA-WEST, LLC, MARK WIPPLER, AN INDIVIDUAL, and Does 1-200, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-02162-JES-VET<br><br>Hon. James E. Simmons, Jr.<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date:      March 19, 2025<br>Time:      10:00 a.m.<br>Courtroom: 4B |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.   The IBWC ............................................................................... 2

    B.   The Plant ................................................................................ 3

    C.   The USIBWC's Control Of The Plant ................................... 5

    D.   Plaintiffs' Claims .................................................................. 6

    E.   Removal To This Court ......................................................... 6

ARGUMENT .................................................................................................... 7

I.    The Court Has Federal-Officer Jurisdiction Under 28 U.S.C. § 1442(a)(1) ............ 7

    A.   Section 1442 Should Be Liberally Construed In Favor Of Removal ........... 7

    B.   Veolia Was "Acting Under" A Federal Officer ................................. 8

    C.   Veolia Has A Colorable Federal Defense .................................... 13

II.   The Court Has Federal-Enclave Jurisdiction Over Plaintiffs' Claims .................. 16

III.  There Is Complete Diversity Jurisdiction Under 28 U.S.C. § 1332 Because Plaintiffs Inappropriately Joined Defendant Mark Wippler .................................. 19

CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison v. Allstate Ins.*,
    58 F. Supp. 2d 729 (S.D. Miss. 1999) ................................................................20

*Albers v. Yarbrough World Solutions, LLC*,
    2020 WL 2218964 (N.D. Cal. May 7, 2020) ........................................................18

*Allison v. Boeing Laser Tech. Servs.*,
    689 F.3d 1234 (10th Cir. 2012) ..........................................................................17

*Arizona v. Manypenny*,
    451 U.S. 232 (1981) ..............................................................................................7

*Badon v. RJR Nabisco, Inc.*,
    224 F.3d 382 (5th Cir. 2000) ..............................................................................20

*Cabalce v. Thomas E. Blanchard & Assocs.*,
    797 F.3d 720 (9th Cir. 2015) ........................................................................12, 15

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)..............................................................................................15

*City of Imperial Beach v. IBWC*,
    356 F. Supp. 3d 1006 (S.D. Cal. 2018)..............................................................3, 4

*Cnty. of San Mateo v. Chevron Corp.*,
    32 F.4th 733 (9th Cir. 2022) ............................................................8, 9, 18, 19

*Colorado v. Symes*,
    286 U.S. 510 (1932)..............................................................................................7

*Compton v. Oasis Sys., LLC*,
    549 F. Supp. 3d 1173 (S.D. Cal. 2021)..............................................................16

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014) ................................................................................................8

*DeFiore v. SOC LLC*,
    85 F.4th 546 (9th Cir. 2023) ..........................................................................8, 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Durham v. Lockheed Martin Corp.*,
  445 F.3d 1247 (9th Cir. 2006) ..................................................................7, 16

*Fidelitad, Inc. v. Insitu, Inc.*,
  904 F.3d 1095 (9th Cir. 2018) ...........................................................................17

*Fung v. Abex Corp.*,
  816 F. Supp. 569 (N.D. Cal. 1992)....................................................................17

*Gomes v. Michaels Stores, Inc.*,
  2006 WL 3079024 (E.D. Cal. Oct. 27, 2006)....................................................20

*Goncalves v. Rady Children's Hosp. San Diego*,
  865 F.3d 1237 (9th Cir. 2017) ....................................................................12, 13

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174 (1988).............................................................................................16

*Hancock v. Train*,
  326 U.S. 167 (1976).............................................................................................16

*In re High-Tech Emp. Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012).............................................................17

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) ................................................................................8

*Jamil v. Workforce Res., LLC*,
  2018 WL 2298119 (S.D. Cal. May 21, 2018) ...................................................18

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999).........................................................................................7, 8

*Jimenez v. Haxton Masonry, Inc.*,
  2020 WL 3035797 (N.D. Cal. June 5, 2020)....................................................18

*Julie Maynard, Inc. v. Whatever It Takes Transmissions & Parts*,
  2020 WL 1244189 (S.D. Ohio Mar. 16, 2020)..................................................20

1

2

# TABLE OF AUTHORITIES
(continued)

3

**Page(s)**

4

*Kircher v. Putnam Funds Tr.*,

5

    547 U.S. 633 (2006)...................................................................................7

6

*Lane v. Pena*,

7

    518 U.S. 187 (1996)...................................................................................13

8

*Moore v. Elec. Boat Corp.*,

    25 F.4th 30 (1st Cir. 2022)........................................................................13

9

10

*Nat. Res. Def. Council, Inc. v. Cnty. of L.A.*,

    725 F.3d 1194 (9th Cir. 2013) ...................................................................17

11

12

*North v. Samsung SDI Am., Inc.*,

    2020 WL 1984020 (N.D. Cal. Apr. 27, 2020)...........................................20

13

*Powell v. Tessada & Assocs.*,2005 WL 578103 (N.D. Cal. Mar. 10, 2005) ...........18

14

15

*Rockwell v. Air & Liquid Sys. Corp.*,

    2021 WL 8527622 (C.D Cal. Nov. 2, 2021) .......................................17

16

17

*Rojas v. Sea World Parks & Ent., Inc.*,

    538 F. Supp. 3d 1008 (S.D. Cal. 2021)........................................................19, 20

18

19

*Stiefel v. Bechtel Corp.*,

    497 F. Supp. 2d 1138 (S.D. Cal. 2007)................................................................18

20

21

*Sundaram v. Brookhaven Nat'l Lab'ys*,

    424 F. Supp. 2d 545 (E.D.N.Y. 2006) ................................................................16

22

23

*Thompson v. Wallace Com. Landscape*,

    2024 WL 3836098 (S.D. Cal. Aug. 15, 2024)....................................................18

24

*Watson v. Philip Morris Cos.*,

    551 U.S. 142 (2007)..................................................................7, 9, 10, 13

25

26

*Whisnant v. United States*,

    400 F.3d 1177 (9th Cir. 2005) .............................................................14

27

28

*Willingham v. Morgan*,

    395 U.S. 402 (1969).................................................................7, 13

1
2
3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940)......................................................................................13, 15

**Constitution, Treaty, and Statutes**

U.S. Const. art. I, § 8, cl. 17....................................................................................16

Treaty Respecting Utilization of Waters of the Colorado and Tijuana Rivers and
of the Rio Grande, U.S.-Mex., Feb. 3, 1944, 59 Stat. 1219 (1944)..........................3

22 U.S.C. § 277d-43................................................................................................14

26 U.S.C. § 2680(a) ................................................................................................14

28 U.S.C. § 1331......................................................................................................6

28 U.S.C. § 1332..............................................................................................19, 20

28 U.S.C. § 1441......................................................................................................6

28 U.S.C. § 1442......................................................................................................1

28 U.S.C. § 1442(a)(1).......................................................................................6, 7, 8

33 U.S.C. § 1251.............................................................................................*passim*

Cal. Health & Safety Code § 5411.............................................................................6

Cal. Water Code § 179..............................................................................................4

Water Quality Control Act of 1987, Pub. L. No. 100-4, 101 Stat. 7 (1987) .....14, 15

**Other Authorities**

14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 3733 (2024)........................................................................................8

Approval of California's Revisions to the State National Pollutant Discharge
Elimination System Program, 54 Fed. Reg. 40664 (Oct. 3, 1989)..........................4

Envtl. Prot. Agency, *Municipal Wastewater* (Apr. 19, 2024) ................................10

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

Envtl. Prot. Agency & U.S. Section, Int'l Boundary and Water Comm'n,
*Final Programmatic Environmental Impact Statement, USMCA
Mitigation of Contaminated Transboundary Flows Project*
(Nov. 2, 2022) ....................................................................................3, 4

Int'l Boundary & Water Comm'n, Minute No. 283 (July 2, 1990)..........................3

San Diego Region, Cal. Reg'l Water Quality Control Bd., *Executive
Officer's Report* (Nov. 13, 2024).................................................4, 5, 12

*San Diego Regional Water Quality Control Board May Meeting*, YouTube
(May 8, 2024)................................................................................5, 12

# INTRODUCTION

Plaintiffs sued a government contractor acting under the direction of the federal government, for actions related to a federal enclave. And all of the real parties are diverse. This case belongs in federal court.

Plaintiffs filed a complaint in San Diego Superior Court, asserting claims related to pollution in the waters near Imperial Beach, California. They allege that defendants Veolia Water West Operating Services, Inc., Veolia Water North America-West, LLC (together, Veolia), and Mark Wippler, a Veolia employee, caused this contamination due to a failure to properly manage the South Bay International Water Treatment Plant (the Plant), which Veolia operates pursuant to a contract with a federal agency, the United States International Boundary and Water Commission (USIBWC).

Veolia removed the action to this Court, and plaintiffs now move to remand the case to state court. The Court should deny the motion to remand because under well-established Supreme Court and Ninth Circuit precedent, there are three separate bases for subject-matter jurisdiction in this Court: federal-officer jurisdiction, federal-enclave jurisdiction, and diversity jurisdiction.

First, federal-officer jurisdiction exists because Veolia is a "person" within the meaning of 28 U.S.C. § 1442, the case is for or relates to Veolia's actions under a federal officer, and Veolia has a colorable derivative sovereign-immunity defense. Plaintiffs dispute that Veolia was "acting under" the USIBWC, but the allegations in the notice of removal – which the Court takes as true on a motion to remand – establish that Veolia is a contractor that acts at the federal government's direction, particularly with respect to major operational decisions like water discharge and permit compliance. Plaintiffs argue that Veolia has failed to show that it is entitled to derivative sovereign immunity, but Veolia need only show that the defense is "colorable," meaning that it is not immaterial, insubstantial, or frivolous. Veolia easily passes that low threshold because the allegations plausibly show that Congress has not waived the USIBWC's sovereign immunity and Veolia acted pursuant to the USIBWC's express direction.

Second, federal-enclave jurisdiction exists because the Plant is a federal enclave not subject to the jurisdiction of the State of California. The Plant is owned and operated by the federal government and performs the federal function of treating wastewater entering the United States from Mexico. It is also located on federally-owned land. Courts consistently have held that federal-enclave jurisdiction exists where the relevant events took place inside the federal enclave, even when (like here) the harm plaintiffs allegedly suffered occurred outside that enclave.

Finally, diversity jurisdiction exists because all properly joined parties are diverse. It is undisputed that plaintiffs and the Veolia defendants are diverse and that the amount in controversy exceeds $75,000. Diversity jurisdiction is destroyed only because Mr. Wippler, a Veolia employee and California citizen, was named a defendant in this action. But courts in this district have recognized that a defendant's citizenship should be disregarded if the defendant was named only to destroy diversity. Here, the complaint is bereft of any allegations indicating how Mr. Wippler himself acted tortiously. Plaintiffs' conclusory allegations fail to establish that Mr. Wippler was properly joined, so the Court should disregard his citizenship for the purpose of evaluating diversity jurisdiction.

The Court should deny the motion to remand.

## BACKGROUND

This dispute concerns the transboundary flow of sewage in the Tijuana River watershed. Removal Notice ¶ 10, Dkt. No. 1. For years, untreated sewage, trash, and sediment have flowed northwest from Mexico into the United States via the Tijuana River. *Id.* ¶ 12. Mexico's rapid population growth, coupled with insufficient wastewater treatment in Tijuana, has increased the volume of sewage entering the United States, exacerbating the strain on an already overwhelmed sanitation system. *Id.*

### A.    The IBWC

The International Boundary and Water Commission (IBWC), a binational body consisting of an American section (USIBWC) and a Mexican section, is tasked with addressing issues related to the use, ownership, and sanitary treatment of water at the

United States-Mexico border. Removal Notice ¶ 13 (citing Treaty Respecting Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande, U.S.-Mex., Feb. 3, 1944, 59 Stat. 1219 (1944 Treaty)). Waterworks that the countries construct, acquire, or use to fulfill the Treaty's purpose are "under the exclusive jurisdiction and control of the Section of the [IBWC] in whose country the works may be situated." *Id*. (quoting 1944 Treaty art. 2).

In 1990, the IBWC agreed to address transboundary sewage. *See* Removal Notice ¶ 14 (citing IBWC, Minute No. 283 at 5-9 (July 2, 1990) (Minute 283), https://www.ibwc.gov/wp-content/uploads/2023/05/Min283.pdf). Mexico committed to "immediately stop . . . discharges" caused by "a breakdown in [sewage] collection or other detention facilities" and to "immediately . . . make repairs." *Id*. (quoting Minute 283 at 8 ¶ 16). The agreement led to the construction of the Plant, which is owned by the USIBWC and located in San Diego County on federally-owned land, 1.3 miles west of the entry point of the Tijuana River into the United States. *Id.* ¶ 15; Wippler Decl. ¶ 2; *City of Imperial Beach v. IBWC*, 356 F. Supp. 3d 1006, 1011-12 (S.D. Cal. 2018); Envtl. Prot. Agency & U.S. Section, Int'l Boundary & Water Comm'n, *Final Programmatic Environmental Impact Statement, USMCA Mitigation of Contaminated Transboundary Flows Project* 1-5 (Nov. 2, 2022) (EIS), https://www.epa.gov/system/files/documents/2022-11/Programmatic%20Environmental%20Impact%20Statement.pdf.

## B.    The Plant

The Plant was designed to supplement Mexico's limited wastewater treatment capabilities by treating 25 million gallons of untreated wastewater that enters the United States from Mexico every day. Removal Notice ¶ 16. The sewage comes primarily from the "International Collector," a cross-border sewer line controlled in Mexico that diverts wastewater from downtown Tijuana that otherwise would flow into the Tijuana River. *Id.* (citing EIS 1-5 to 1-8). A much smaller amount of sewage comes from five USIBWC-owned diversion structures in the canyon tributaries along the border, called canyon collectors, that are intended to "divert incidental releases of wastewater from Tijuana" that

flow into the United States. *Id.* (citing San Diego Region, Cal. Reg'l Water Quality Control Bd., *Executive Officer's Report* 7 (Nov. 13, 2024) (Executive Officer's Nov. 2024 Report), https://waterboards.ca.gov/sandiego/publications_forms/publications/docs/executive_officer_reports/2024/eor_11_13_2024.pdf); EIS 1-5.

A Clean Water Act permit authorizes the Plant to discharge treated effluent through the South Bay Ocean Outfall into the Pacific Ocean 3.5 miles offshore, too far to reach Imperial Beach. *See* Removal Notice ¶ 19. The permit was issued by the Regional Water Quality Control Board, San Diego Region (Regional Water Board) through authority delegated to it by the Environmental Protection Agency. *Id.* (citing EIS at 3-4; Approval of California's Revisions to the State National Pollutant Discharge Elimination System Program, 54 Fed. Reg. 40664 (Oct. 3, 1989); Cal. Water Code § 179). The permit lists the USIBWC as the sole discharger, *id.* ¶ 22 (citing Ex. 3 at 1), and the USIBWC ensures compliance with the permit, Decl. of Morgan Rogers in Supp. of Def. USIWBC's Status Report (First Rogers Decl.) ¶ 2, *San Diego Coastkeeper v. U.S. Int'l Boundary & Water Comm'n*, No. 3:24-cv-663 (S.D. Cal. Sept. 30, 2024), Dkt. No. 26-1.

The Plant does not treat sewage from or discharge sewage into the Tijuana River or Estuary. Removal Notice ¶ 18 (citing EIS 1-11). However, "frequent[] malfunctions" of the International Collector in Mexico allow sewage to flow directly into the Tijuana River. *Id.* (citing *IBWC*, 356 F. Supp. 3d at 1012). In addition, "wastewater collection system deficiencies in Tijuana" have resulted in a constant stream of sewage to the Plant's canyon collectors, which are not intended "to be a default collection system for continuous flows" from Mexico, thereby resulting in damage to the Plant's sewage-treatment equipment. *Id.* (quoting Executive Officer's November 2024 Report 7).

Beginning in approximately 2024, the Plant has seen a substantial increase in the amount of sediment carried by transboundary flows to the canyon collectors due to a large highway project in Mexico that runs parallel to stretches of the international boundary. Decl. of Morgan Rogers in Supp. of Def. USWIBC's Status Report (Second Rogers Decl.) ¶¶ 10-11, *San Diego Coastkeeper* (Nov. 27, 2024), Dkt. No. 33-1. On occasion, when

sediment contained in those flows damaged Plant equipment, such as the Hollister Street Pump Station, USIBWC has decided to shut down the canyon collectors to prevent further damage. Removal Notice ¶ 18 (citing Executive Officer's November 2024 Report 2, 7); Second Rogers Decl. ¶¶ 12-13; Wippler Decl. Ex. C. USIBWC also authorizes closure of the canyon collectors during rain events, as allowed by the permit. Wippler Decl. ¶ 7.

### C.    The USIBWC's Control Of The Plant

Beginning in 1997, the USIBWC contracted with Veolia to operate and maintain the Plant. *See* Removal Notice Ex. 4 (contract between USIBWC and Veolia Water West Operating Services). At all times during the USIBWC-Veolia relationship, the USIBWC has been in charge, and Veolia has acted pursuant to the USIBWC's guidance and control. *See* Removal Notice ¶ 20; First Rogers Decl. ¶ 2 (stating that job responsibilities of USIBWC's operations manager include "supervis[ing] the operations and maintenance activities . . . which includes overseeing and managing the Operation & Maintenance contract for [the Plant] and ensuring compliance with the associated [Clean Water Act Permit]"); Wippler Decl. ¶ 5.

The USIBWC retains ultimate decision-making authority for Plant operations, including all decisions relevant to water discharge and permit compliance. Removal Notice ¶ 20 (citing *San Diego Regional Water Quality Control Board May Meeting* 1:13:55-1:14:20, YouTube (May 8, 2024), https://www.youtube.com/watch?v=fLelgalO9GY (comment from USIBWC Commissioner that "I am intimately involved in . . . every single activity related to" permit compliance and "I am not delegating this")); Executive Officer's Nov. 2024 Report 2, 7, 12; First Rogers Decl. ¶¶ 3-9 (listing various actions taken by USIBWC to restore the Plant); Wippler Decl. ¶¶ 5-8.

USIBWC maintains an on-site location at the Plant, requires frequent meetings with Veolia staff, and has final approval authority for Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, and the Plant's safety plan and emergency preparedness plan. Removal Notice ¶¶ 32, 46; First Rogers Decl. ¶ 2; Wippler Decl. Ex. B. Although Veolia makes recommendations as to repairs and capital purchases, *see* Wippler Decl. ¶ 5 & Ex.

1    A, the operative contract requires USIBWC's approval for any repair or improvement to

2    the Plant exceeding $100,000, Removal Notice ¶ 20 (citing Ex. 4 at C-17 ¶ c(9)).

3        USIBWC's control over the Plant is illustrated by recent repairs to Junction Box-1

4    (JB-1). JB-1 is a concrete box structure with a gate that allows the Plant to shut off or

5    decrease flows from Mexico through the International Collector. Second Rogers Decl.

6    ¶¶ 20, 23. In approximately 2022, the gate was determined to be structurally compromised

7    and USIBWC decided to weld it in place. Wippler Decl. ¶ 9. Without an operative gate,

8    the Plant was unable to control the volume of influent flows. *Id.* USIBWC awarded a

9    contract for the permanent rehabilitation of JB-1 in August 2023 and broke ground on the

10    project in September 2024. First Rogers Decl. ¶ 7. USIBWC also approved installation of

11    a temporary gate until the new JB-1 structure is complete. Second Rogers Decl. ¶¶ 24-25.

12    ### D.    Plaintiffs' Claims

13        Plaintiffs are residents of Imperial Beach. Compl. ¶ 1. On October 15, 2024,

14    plaintiffs filed this lawsuit in the Superior Court for the County of San Diego. They alleged

15    that defendants, through their purported negligent and intentional mismanagement of the

16    Plant, had failed to comply with the Clean Water Act permit and caused raw sewage and

17    other contaminants to flow into the waters in and near their homes in Imperial Beach,

18    causing harm to plaintiffs and their properties. Plaintiffs asserted claims of negligence (*id.*

19    ¶¶ 33-44), public nuisance (*id.* ¶¶ 45-56), private nuisance (*id.* ¶¶ 57-63), trespass (*id.*

20    ¶¶ 64-70), battery (*id.* ¶¶ 71-76), and violations of California Health & Safety Code § 5411

21    (*id.* ¶¶ 77-80). Plaintiffs seek monetary damages for loss of the use of property, lost wages,

22    and medical expenses, among other things, including for past and future harm. *Id.* at 20

23    (Prayer for Relief). Plaintiffs also seek punitive damages. *Id.*

24    ### E.    Removal To This Court

25        On November 18, 2024, defendants removed the action to this Court, alleging as

26    grounds for removal federal-officer jurisdiction under 28 U.S.C. § 1442(a)(1), federal-

27    enclave jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C.

28    § 1441. Removal Notice ¶¶ 24-59.

1

**ARGUMENT**

2

**I.    The Court Has Federal-Officer Jurisdiction Under 28 U.S.C. § 1442(a)(1)**

3

To invoke federal-officer jurisdiction under 28 U.S.C. § 1442(a)(1), a defendant

4

"must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a

5

causal nexus between its actions, taken pursuant to a federal officer's directions, and

6

plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed*

7

*Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting *Jefferson Cnty. v. Acker*, 527

8

U.S. 423, 431 (1999)). Plaintiffs do not dispute that Veolia is a "person" within the meaning

9

of the federal officer removal statute. *See* Mot. 6. They argue instead that Veolia was not

10

"acting under" a federal officer and that Veolia fails to assert a colorable federal defense.

11

Plaintiffs are wrong.

12

**A.    Section 1442 Should Be Liberally Construed In Favor Of Removal**

13

The Supreme Court has repeatedly held that the requirements of 28 U.S.C.

14

§ 1442(a)(1) "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris*

15

*Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

16

The statute provides "an exception to the 'well-pleaded complaint' rule" in that the basis

17

for federal jurisdiction is not limited to the four corners of the complaint; instead, federal-

18

court jurisdiction may arise solely through a federal defense asserted by the defendant.

19

*Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006).

20

Federal-officer removal is neither "narrow" nor "limited" because "[o]ne of the

21

primary purposes of the removal statute" is to have federal "defenses litigated in the federal

22

courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). The Supreme Court thus "has

23

held that the right of removal is absolute for conduct performed under color of federal

24

office, and has insisted that the policy favoring removal 'should not be frustrated by a

25

narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232,

26

242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

27

Consistent with that understanding, courts apply "the same liberal rules employed in

28

testing the sufficiency of a pleading . . . to appraise the sufficiency of a defendant's notice

1    of removal." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*
2    *Procedure* § 3733 & n.17 (2024) (collecting cases). Under that standard, "a defendant's
3    notice of removal need include only . . . plausible allegation[s]" regarding the removal
4    requirements, *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), and
5    courts should "credit the [removing defendant's] theory of the case," *Acker*, 527 U.S. at
6    432.

7    Plaintiffs argue (Mot. 6) that Veolia must establish the elements of the federal officer
8    removal statute by a preponderance of the evidence. That standard applies only when the
9    remand motion "raises a factual challenge by contesting the truth of the remover's factual
10   allegations, usually by introducing evidence outside the pleadings." *DeFiore v. SOC LLC*,
11   85 F.4th 546, 553 (9th Cir. 2023) (cleaned up). It does not apply "where the moving party
12   does not contest the removal notice's factual allegations but instead asserts that those
13   allegations are facially insufficient to invoke federal jurisdiction." *Id.* at 552. In that
14   situation, the court "accept[s] the notice's factual allegations as true and draw[s] all
15   reasonable inferences in favor of the remover." *Id.*

16   Here, plaintiffs' motion to remand introduces no evidence outside the pleadings and
17   does not contest the truth of Veolia's factual allegations. *See generally* Mot. Instead,
18   plaintiffs argue only that Veolia's notice of removal is facially insufficient to support
19   federal jurisdiction. *See id.* at 7-9. The preponderance-of-the-evidence standard thus does
20   not apply; the Court instead should accept as true all well-pleaded factual allegations in
21   Veolia's notice of removal and liberally construe § 1442(a)(1) in favor of removal.

22   **B.    Veolia Was "Acting Under" A Federal Officer**

23   The causal nexus requirement of § 1442(a)(1) has two prongs. The removing party
24   "must show: (1) that [it was] acting under a federal officer in performing some act under
25   color of federal office, and (2) that such action is causally connected with the plaintiff's
26   claims against it." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022)
27   (internal quotation marks omitted). Courts have recognized that the "hurdle erected by this
28   requirement is quite low." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

1    Here, plaintiffs dispute only the first prong – that Veolia was "acting under" a federal
2    officer's directions.

3    The Supreme Court has explained that "acting under" means that the private party
4    "*assist*[*ed*], or . . . help[ed] *carry out*, the duties or tasks of the federal superior." *Watson*,
5    551 U.S. at 152. The "relationship typically involves subjection, guidance, or control." *Id.*
6    at 151 (internal quotation marks omitted). A court may consider whether the private party
7    assists the federal officer in fulfilling "basic governmental tasks" that "the Government
8    itself would have had to perform" if it had not contracted with a private firm. *Id.* at 153-54.
9    A court also may consider "whether the private person's activity is so closely related to the
10   government's implementation of its federal duties that the private person faces 'a
11   significant risk of state-court prejudice,' just as a government employee would in similar
12   circumstances, and may have difficulty in raising an immunity defense in state court." *Cnty.*
13   *of San Mateo*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 152).

14   In their motion to remand, plaintiffs characterize the Veolia-USIBWC relationship
15   as merely an "arm's-length business arrangement," "participa[ting] in a regulated industry,"
16   or "compl[ying] with the law (or acquiesc[ing] to an order)." Mot. 6-7. But as the contract
17   and the parties' course of performance demonstrate, Veolia manages the Plant pursuant to
18   the USIBWC's express direction.

19   First, the USIBWC-Veolia contract establishes that Veolia is contractually obligated
20   to "assist[]" the USIBWC and help the USIBWC "carry out" its duties to operate the Plant.
21   *Watson*, 551 U.S. at 152. Those duties include providing labor, material, and other
22   resources required to maintain the Plant and its facilities. *See* Removal Notice ¶ 29 (citing
23   Ex. 4 at C-1). Veolia carries out those duties by providing day-to-day planning,
24   administration, and personnel for Plant operations, which include influent and effluent
25   sampling and laboratory testing; equipment and vehicle operation and maintenance; system
26   monitoring and operation; data recording and reporting; capital improvements;
27   housekeeping; grounds maintenance; supplying consumables including chemicals; and
28   other services related to the operation and maintenance of the Plant. *See id.* In doing so,

Veolia assists the USIBWC with a basic governmental task – treating wastewater – that it would have to perform itself had it not contracted with Veolia to operate the plant. *See* Envtl. Prot. Agency, *Municipal Wastewater* (Apr. 19, 2024), https://www.epa.gov/npdes/municipal-wastewater.

Veolia also operates the Plant under the USIBWC's "subjection, guidance, [and] control." *Watson*, 551 U.S. at 151. Under the contract governing their relationship, the USIBWC is the ultimate decision-maker on all major operational decisions. The contract provides that "the [the Plant] is operated under the authority of the United States Section, International Boundary and Water Commission (USIBWC)." Removal Notice ¶ 31 (quoting Ex. 4 at C-1); *see* First Rogers Decl. ¶ 2. The USIBWC's contracting officer has final approval authority for Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, and the Plant's safety plan and emergency preparedness plan. Removal Notice ¶ 32 (citing Ex. 4 at C-5, C-10, C-11, C-12, C-28); *see* Wippler Decl. ¶ 6 & Ex. B. Veolia's personnel cannot "[b]e placed in a position of command, supervision, administration or control over USIBWC personnel." Removal Notice ¶ 32 (quoting Ex. 4 at § H.02). All Veolia "personnel [are] . . . required to obtain access authorization from the USIBWC . . . prior to entering the [Plant] and facilities." *Id.* (quoting Ex. 4 at C-8). Veolia also "shall not divert or otherwise replace any key personnel without the written consent of the [USIBWC's] Contracting Officer" and "[t]he Contracting Officer's decision in regards to replacement . . . shall be final." *Id.* (quoting Ex. 4 at C-10). The USIBWC also limits the maximum number of hours that Veolia personnel can work: "ten (10) hours per day." *Id.* (quoting Ex. 4 at C-11). The USIBWC may "require" that Veolia "remove from the work place any employee the [USIBWC] deems incompetent, careless, a conflict of interest or otherwise objectionable." *Id.* (quoting Ex. 4 at C-12). And the contracting officer has discretion to issue stop-work orders. *Id.* (quoting Ex. 3 at 12 § 52.242-15).

The contract also makes clear that only the USIBWC has authority to approve and fund "major repairs, refurbishments, replacements, and upgrades in future years." Removal Notice ¶ 33 (quoting Ex. 4 at C-17). Veolia's scope of work only includes "repairs,

refurbishments, replacements, or upgrades under $100,000." *Id.* Any work above this amount requires the USIBWC's express approval. *See id.*; First Rogers Decl. ¶¶ 3-9; Wippler Decl. ¶ 5 & Ex. A.

Plaintiffs note (Mot. 8) that one of the provisions in the contract provides that Veolia's "personnel . . . shall not . . . [b]e placed in a position where they are appointed or employed by a federal officer, or under the supervision, direction, or evaluation of a federal officer." Removal Notice Ex. 4, § H.02(a)(1)(i). Plaintiffs argue that this provision shows that Veolia does not operate under the control of the USIBWC. Plaintiffs misread the provision. The provision addresses the status of *individual* Veolia personnel; it makes clear those individuals are Veolia employees and not federal employees. As explained, the contract elsewhere makes clear that Veolia as an entity operates the Plant under the direction of the USIBWC.

Second, Veolia performs the contract under the close direction and control of the USIBWC. For example, Veolia inspects the canyon collectors on a daily basis and then relays its observations to the USIBWC via a form template created by the government. Removal Notice ¶ 34 (citing Ex. 5). Veolia regularly drafts reports required under the Clean Water Act permit and transmits these reports to the USIBWC for transmission to its regulator. *Id.*; *see* Second Rogers Decl. ¶¶ 17-19. Veolia also was provided with a "document [that] covers the Sequence of Operation (SOO) in place to run and maintain the plant." Removal Notice ¶ 35 (citing Ex. 6 at 1). Among other procedures, the document provides the "standard operating procedure for the start-up and shutdown of the Headworks for the South Bay International Wastewater Treatment Plant." *Id.* (quoting Ex. 6 at 14). Plaintiffs' argument (Mot. 8) that Veolia relies on mere "contract generalities" simply ignores these detailed allegations in the notice of removal – allegations that the Court credits as true.

Importantly, it is the USIBWC, and not Veolia, that has authority to decide whether to shut off water flow from the canyon collectors in order to prevent damage from unforeseen events like excessive sediment flows. Removal Notice ¶ 36 (citing Executive

Officer's November 2024 Report 2, 7); Wippler Decl. ¶ 7 ("USIBWC ultimately decides when the flow of sewage from the canyon collectors to the pump stations should be shut off."). Veolia thus defers to the USIBWC on decisions relevant to water discharge and permit compliance. Indeed, USIBWC Commissioner Dr. Maria Giner explained that she is "intimately involved in . . . every single activity related to" Clean Water Act permit compliance and that the USIBWC is "not delegating this." Removal Notice ¶ 31 (quoting *San Diego Regional Water Quality Control Board May Meeting* 1:13:55-1:14:20, YouTube (May 8, 2024), https://www.youtube.com/watch?v=fLelgalO9GY).

Ignoring this evidence, plaintiffs argue (Mot. 7) that Veolia's status as an "independent contractor" with "day-to-day control over the operation and maintenance of the Plant" weighs against finding that Veolia acted under the USIBWC. Plaintiffs primarily rely on *Cabalce v. Thomas E. Blanchard & Associates*, 797 F.3d 720 (9th Cir. 2015), but that case is distinguishable. There, a government contractor agreed to store and destroy fireworks seized by the federal government; the plaintiffs sued in state court and asserted claims against the contractor arising from the deaths of workers killed in an explosion from those fireworks. *Id.* at 723. The Ninth Circuit held that the contractor had failed to establish the "acting under" requirement because it had introduced no evidence concerning "the requisite federal control or supervision over the handling of the seized fireworks." *Id.* at 728. Here, by contrast, Veolia has introduced extensive evidence that the USIBWC exerted control and supervision over Veolia, as reflected in both their contract *and* the parties' actual course of performance. That control and supervision also extend to water discharge and permit compliance, which lie at the heart of plaintiffs' theory of liability. *See* Compl. ¶¶ 1-9.

The Ninth Circuit's decision in *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017), is on all fours with this case. There, the Court held that a government contractor administering a federal employee health plan "acted under" a federal officer when it pursued a subrogation claim in state court. *Id.* at 1247. The Court relied on "the interconnectedness" between the government and the contractor in operating

1    and administering the plan, *id.*, as the government was "responsible for the overall

2    administration of the program while sharing the day-to-day operating responsibility with"

3    the contractor, *id.* at 1246 (internal quotation marks omitted).

4    The same is true here. The well-pleaded allegations establish the same

5    "interconnectedness" between Veolia and the USIBWC in operating the Plant. On a daily

6    basis, Veolia "assist[s]" the USIBWC and "help[s] carry out" its duties – and all pursuant

7    to the USIBWC's "subjection, guidance, [and] control." *Watson*, 551 U.S. at 152. The

8    notice of removal easily satisfies the low bar of the "acting under" requirement.[1]

9    ### C.    Veolia Has A Colorable Federal Defense

10    Veolia also adequately alleged a "colorable" derivative sovereign-immunity defense.

11    A defendant need only plead a "colorable" defense, because a defendant "need not win his

12    case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). A

13    federal defense is colorable "unless it is immaterial and made solely for the purpose of

14    obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Corp.*,

15    25 F.4th 30, 37 (1st Cir. 2022) (internal quotation marks omitted).

16    Under the derivative sovereign-immunity defense the Supreme Court recognized in

17    *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), a defendant is not liable if:

18    (1) the government's sovereign immunity has not been waived; (2) the authority to carry

19    out the contract is validly conferred; and (3) the contractor performed the contract as

20    directed by the government. *Id.* at 20-21. Plaintiffs do not dispute the second element. As

21    to the first and third elements, Veolia's allegations in the notice of removal are more than

22    sufficient to establish that the defense is not immaterial, insubstantial, or frivolous.

23    On the first element, any waiver of the United States' sovereign immunity "must be

24    unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The

25    USIBWC is a federal agency that owns the Plant and hired Veolia to operate and maintain

26

27    ---

28    [1] Plaintiffs also imply that the "acting under" requirement is not satisfied because Veolia was not the USIBWC's "agent." Mot. 9. But the Ninth Circuit has held that agency is but one way to establish this requirement, and that "acting under" status is not "limited to the government's common-law agents." *DeFiore*, 85 F.4th at 556-57.

1    it. Compl. ¶¶ 17, 23. Neither the 1944 Treaty nor a federal statute expressly waives the

2    USIBWC's sovereign immunity.

3        Plaintiffs argue (Mot. 9-10) that the Federal Tort Claims Act (FTCA)'s waiver of

4    sovereign immunity applies to the USIBWC's conduct. They are mistaken. The FTCA

5    waives the federal government's sovereign immunity when the acts alleged are negligent

6    or wrongful, but there is an exception for discretionary actions. 26 U.S.C. § 2680(a). An

7    action is discretionary when it is not "governed by a mandatory statute, policy, or

8    regulation," and the judgment or choice in question "is of the type Congress meant to

9    protect" – *i.e.*, the action "involves a decision susceptible to social, economic, or political

10   policy analysis." *Whisnant v. United States*, 400 F.3d 1177, 1180-81 (9th Cir. 2005).

11       The discretionary-function exception applies here. "No statute, policy, or regulation

12   prescribe[s] the specific manner in which" the USIBWC manages the Plant or specifies

13   how it should "address[]" excessive sewage flows from Mexico. *Whisnant*, 400 F.3d at

14   1181. The 1944 Treaty authorizes the USIBWC to "operate and maintain" "agreed upon . . .

15   works" in accordance with law. 1944 Treaty art. 24(b). Congress later authorized the

16   USIBWC "to operate and maintain any treatment works constructed" to "provide primary

17   or more advanced treatment of municipal sewage and industrial waste from Mexico" in

18   order to "protect the economy, public health, environment, surface water and public

19   beaches and water quality of the city of San Diego, California, and surrounding areas."

20   Water Quality Control Act of 1987, Pub. L. No. 100-4, §§ 510(a), (b)(2), (d), 101 Stat. 7,

21   80-81 (1987); *see* 22 U.S.C. § 277d-43(3). Accordingly, the USIBWC has broad discretion

22   to operate the Plant to protect the economy, public health, the environment, and water

23   quality.

24       The Clean Water Act permit does not circumscribe that broad grant of discretion. As

25   alleged in the notice of removal, the permit vests the USIBWC with the authority to "take

26   all reasonable steps to minimize or prevent any discharge . . . that has a reasonable

27   likelihood of adversely affecting human health or the environment." Removal Notice ¶ 44

28   (quoting Ex. 3 at D-1). And the permit also allows for the USIBWC to intentionally divert

1    "waste streams from" the Plant facilities if doing so will "prevent loss of life, personal

2    injury, or severe property damage." *Id.* (quoting Ex. 3 at D-2, D-3). Such authority is

3    consistent with the broad discretion Congress has afforded the USIBWC "to protect the

4    economy, public health, environment, surface water and public beaches, and water quality

5    of the city of San Diego, California, and surrounding areas, which are endangered and are

6    being polluted by raw sewage emanating from the city of Tijuana, Mexico." 101 Stat. at

7    80.

8         Plaintiffs assert (Mot. 9-10) that Veolia has not identified any discretionary decisions

9    made by the USIBWC, and that the permit violations were the result of Veolia's

10    discretionary actions, not the USIBWC's. But plaintiffs' core theory of liability is that their

11    damages resulted from purportedly mismanaged Plant operations, and as explained, *see* pp.

12    5-6, 9-12, *supra*, Veolia plausibly alleged that the USIBWC – not Veolia – has discretion

13    with respect to all major decisions concerning Plant operations, including whether to shut

14    off sewage flow from the canyon collectors to the Plant in order to prevent damage, to weld

15    the JB-1 gate in the open position, and to repair or replace major pieces of equipment.

16         As to the third element, the Ninth Circuit has explained that derivative sovereign

17    immunity is "limited to cases in which a contractor had no discretion . . . and completely

18    followed government" orders. *Cabalce*, 797 F.3d at 732 (internal quotation marks omitted);

19    *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 n.7 (2016) ("Critical in *Yearsley*

20    was . . . the contractor's performance in compliance with all federal directions."). As

21    explained, the Notice of Removal plausibly alleges that Veolia has operated and continues

22    to operate the Plant in accordance with the USIBWC's specific guidance and direction.

23    Removal Notice ¶¶ 29, 31-38, 46; *see* Wippler Decl. ¶¶ 5-9. Veolia is in constant (near

24    daily) communication with the USIBWC regarding Plant operations and management.

25    Removal Notice ¶ 34. The USIBWC has ultimate authority over all activities at the Plant,

26    including with respect to water discharge and permit compliance. *Id.* ¶ 20.

27         In sum, Veolia has adequately alleged that it has a colorable derivative sovereign-

28    immunity defense, and so all of the requirements for federal-officer removal jurisdiction

1    are satisfied. The motion to remand should be denied.

2    **II.    The Court Has Federal-Enclave Jurisdiction Over Plaintiffs' Claims**

3             This Court independently has subject-matter jurisdiction because plaintiffs' claims

4    arose on a "federal enclave." *Durham*, 445 F.3d at 1250. Federal-enclave jurisdiction exists

5    where, as here, the federal government has exclusive sovereignty over a federal facility.

6    U.S. Const. art. I, § 8, cl. 17 ("Congress shall have Power . . . To exercise exclusive

7    Legislation in all Cases whatsoever . . . over all Places purchased by the Consent of the

8    Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines,

9    Arsenals, dock-Yards, and other needful Buildings.").

10            "[A] federally owned facility performing a federal function is shielded from direct

11   state regulation, even though the federal function is carried out by a private contractor,

12   unless Congress clearly authorizes such regulation." *Goodyear Atomic Corp. v. Miller*, 486

13   U.S. 174, 180-81 (1988) (citing *Hancock v. Train*, 326 U.S. 167, 168 (1976)); *see Compton

14   v. Oasis Sys., LLC*, 549 F. Supp. 3d 1173, 1182 (S.D. Cal. 2021) (same). Thus, in *Goodyear*,

15   the Supreme Court held that the federal government exercised exclusive sovereignty over

16   a federal nuclear facility operated by a private entity. 486 U.S. at 180-81. Similarly, this

17   Court in *Compton* held that a naval vessel performing a federal function by conducting

18   research and naval support was a federal enclave. 549 F. Supp. 3d at 1182; *see Sundaram

19   v. Brookhaven Nat'l Lab'ys*, 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006) (ruling that

20   laboratory owned by federal government, and performing a federal function by conducting

21   research funded by federal grants, was a federal enclave).

22            As plaintiffs' complaint acknowledges, the Plant is owned and operated by the

23   federal government and performs the federal function of treating wastewater entering the

24   United States from Mexico, addressing a cross-border environmental issue. Compl. ¶ 17.

25   Not only does the federal government – not the State of California – own and operate the

26   Plant, but the federal government – not the State of California – exercises exclusive

27   jurisdiction over it. The federal government also owns the land on which the Plant is located.

28   Wippler Decl. ¶ 2.

Plaintiffs' attempts to defeat federal-enclave jurisdiction lack merit. First, they argue (Mot. 12) that the complaint does not expressly allege that the Plant is a federal enclave. But that is not a requirement for federal-enclave jurisdiction. *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (that plaintiffs "d[id] not mention in their complaint that the alleged exposure to asbestos took place while on . . . federal enclaves" did not deprive the court of federal-enclave jurisdiction). In any event, *defendants* alleged that the Plant is a federal enclave and pleaded facts to support that allegation, Removal Notice ¶¶ 48-50, and in evaluating a motion to remand, a court accepts the "facts alleged in the notice of removal as true," *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1098 (9th Cir. 2018).

Second, Plaintiffs assert (Mot. 12) that "the City of San Diego controls parts of the Plant," but they fail to point to any factual allegation to support this statement. As Plaintiffs' complaint acknowledges, the Plant is federally owned and operated. Compl. ¶ 17.

Third, Plaintiffs argue (Mot. 12) that the federal government cannot have exclusive jurisdiction over the Plant when it is subject to state and regional regulations under the Permit. But Congress may authorize a state to regulate within a federal enclave without divesting the federal government of federal-enclave jurisdiction. *See, e.g.*, *Rockwell v. Air & Liquid Sys. Corp.*, 2021 WL 8527622, at *3 (C.D Cal. Nov. 2, 2021) ("The Supreme Court has recognized at least three exceptions to the rule that only [federal law and] state law in effect at the time of cession applies within the federal enclave . . . [including] where Congress has, by statute, provided a different rule . . . ." (quoting *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012)). Here, Congress has delegated the power to issue permits under the Clean Water Act – including the power to designate regional boards to enforce federal and state water pollution laws – to the State of California. *Nat. Res. Def. Council, Inc. v. Cnty. of L.A.*, 725 F.3d 1194, 1198-99 (9th Cir. 2013). So any authority that California and the Regional Water Quality Control Board have to regulate the Plant fundamentally rests on federal law.

Federal-enclave jurisdiction is appropriate here because plaintiffs' claims "arose" from the Plant, a federal enclave. A court considers "the locus in which the claim arose,"

*In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012), or, put differently, where the "pertinent events" took place, *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1148 (S.D. Cal. 2007).

Plaintiffs argue (Mot. 13) that their injuries did not arise from a federal enclave because they allegedly suffered injuries "to areas outside the Plant." But it is not necessary that *all* of the events relevant to Plaintiffs' claims occurred at the Plant; rather, federal-enclave jurisdiction is appropriate where "the majority of the pertinent events" occurred on a federal enclave. *Thompson v. Wallace Com. Landscape*, 2024 WL 3836098, at *5-6 (S.D. Cal. Aug. 15, 2024) (quoting *Jamil v. Workforce Res., LLC*, 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018)). Courts routinely hold that federal-enclave jurisdiction exists where a plaintiff's claim relates to events that occurred outside of the relevant enclave, so long as the claim ultimately stems from conduct within the enclave. *See, e.g.*, *Thompson*, 2024 WL 3836098, at *6 (federal-enclave jurisdiction appropriate where some of the alleged misconduct took place off-site because the misconduct was "related to" employment on-site); *Jamil*, 2018 WL 2298119 at *3-4 (federal-enclave jurisdiction appropriate where plaintiff sought recovery for off-the-clock work and off-site travel, because allegations stemmed from employment on-site); *Jimenez v. Haxton Masonry, Inc.*, 2020 WL 3035797, at *5 (N.D. Cal. June 5, 2020) (same); *Albers v. Yarbrough World Solutions, LLC*, 2020 WL 2218964, at *8 (N.D. Cal. May 7, 2020) (federal-enclave jurisdiction appropriate where "many" of the alleged torts occurred off-site because employment contract "applied to all contracted services," on- and off-site); *Powell v. Tessada & Assocs.*, 2005 WL 578103, at *2 (N.D. Cal. Mar. 10, 2005) (federal-enclave jurisdiction appropriate where decision to terminate employment was made off-site because allegations related to employment on-site); *Stiefel*, 497 F.Supp.2d at 1147-48 (federal-enclave jurisdiction appropriate where plaintiff was terminated while off-site because claim related to employment on-site).

Plaintiffs primarily rely (Mot. 11-13) on *County of San Mateo*, but that case is distinguishable. There, the court declined to exercise federal-enclave jurisdiction because

the "[t]he connection between conduct on federal enclaves and the [plaintiffs'] alleged injuries is too attenuated and remote," 32 F.4th at 750 – not because the harm occurred to areas outside of the federal enclave. The defendants "allege[d] only that some of the defendants engaged in some conduct on federal enclaves" and did "not allege how much of that conduct occurred on federal enclaves." *Id.* But here, plaintiffs allege that the supposed misconduct at the Plant is the direct and sole cause of their harm. Compl. ¶ 22 ("[t]he discharge of effluent from the [Plant] to the Pacific Ocean . . . is a significant and ongoing source of pollution" causing plaintiffs harm); *id.* ¶¶ 27-28 (alleging that the "fail[ure] to adequately operate, manage, and maintain [the Plant]" has caused "the residents of Imperial Beach [to] suffer daily"). Plaintiffs' claims therefore arose from events at the Plant, a federal enclave.

## III.  There Is Complete Diversity Jurisdiction Under 28 U.S.C. § 1332 Because Plaintiffs Inappropriately Joined Defendant Mark Wippler

In the alternative, this Court has diversity jurisdiction over plaintiffs' claims under 28 U.S.C. § 1332 because this is a civil action in which there is complete diversity between plaintiffs and the properly-joined defendants and the amount in controversy requirement is satisfied.

Plaintiffs do not contest that complete diversity exists between plaintiffs, who are citizens of California, and defendant Veolia Water West Operating Services, Inc., a citizen of Delaware and Massachusetts, and defendant Veolia Water North America-West, LLC, a citizen of Delaware. Mot. 13-17. Nor do they dispute that the amount in controversy exceeds $75,000. *Id.* Rather, plaintiffs contend only that diversity jurisdiction is improper because the complaint names Mr. Wippler, a citizen of California, thereby defeating complete diversity. Compl. ¶ 16. But the Court should disregard Mr. Wippler's citizenship for the purposes of determining diversity jurisdiction because it is clear from the face of the complaint that plaintiffs named Mr. Wippler as a defendant solely to destroy complete diversity. *See Rojas v. Sea World Parks & Ent., Inc.*, 538 F. Supp. 3d 1008, 1027 (S.D. Cal. 2021).

1    The complaint contains virtually no allegations about Mr. Wippler. The complaint

2    alleges only, on information and belief, that Mr. Wippler is a project manager at Veolia

3    and that he failed in performing the duties of his role – in precisely the same way that

4    Veolia is alleged to have failed. Compl. ¶ 16. The complaint does not contain specific

5    allegations as to Mr. Wippler's job duties or how he, individually, "failed . . . to comply

6    with [Veolia's] contract with the . . . IBWC." *Id.* ¶ 27. Nor could it, because Mr. Wippler

7    is not party to the contract between Veolia and USIBWC. There also are no allegations to

8    show that Mr. Wippler is "liable for his own negligence and other tortious conduct,"

9    separate and apart from that which Veolia is alleged to have committed. Mot. 15. Indeed,

10   the complaint mentions Mr. Wippler in only two paragraphs. *See* Compl. ¶¶ 16, 27.

11       Such barebones, conclusory allegations are insufficient to demonstrate that Mr.

12   Wippler was properly joined. *See, e.g.*, *North v. Samsung SDI Am., Inc.*, 2020 WL 1984020,

13   at *4 (N.D. Cal. Apr. 27, 2020) ("allegations . . . based entirely on information and belief

14   and consist[ing] of nothing more than boilerplate legal terms and phrases" insufficient to

15   show defendant was properly joined); *Julie Maynard, Inc. v. Whatever It Takes*

16   *Transmissions & Parts*, 2020 WL 1244189, at *4 (S.D. Ohio Mar. 16, 2020) ("Conclusory

17   allegations cannot overcome fraudulent joinder."); *Gomes v. Michaels Stores, Inc.*, 2006

18   WL 3079024, at *2 (E.D. Cal. Oct. 27, 2006) ("bare assertion . . . without any specific

19   factual allegations" insufficient to show defendant was properly joined); *Addison v.*

20   *Allstate Ins.*, 58 F. Supp. 2d 729, 734 (S.D. Miss. 1999) (to show a defendant was properly

21   joined, a plaintiff "must plead specific facts, not mere conclusory allegations"); *see also*

22   *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-93 (5th Cir. 2000) (defendant fraudulently

23   joined where complaint alleging conspiracy failed to plead "any particular or specific

24   activity, agreement, or state of mind" in support of alleged conspiracy). Given that the

25   complaint contains only threadbare assertions to support plaintiffs' claims against Mr.

26   Wippler, it is clear that the "only reason for raising [Mr. Wippler's] citizenship" was "to

27   destroy diversity." *Rojas*, 538 F. Supp. 3d at 1029. His citizenship thus should be

28   disregarded. The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

**CONCLUSION**

Plaintiffs' motion to remand should be denied.

Dated: February 12, 2025                    **MAYER BROWN LLP**

By: */s/ Matthew D. Ingber*
Matthew D. Ingber, NYBN 2964666
*(pro hac vice)*
mingber@mayerbrown.com
Benjamin D. Bright, NYBN 5413596
*(pro hac vice)*
bbright@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Nicole A. Saharsky, DCBN 495433
*(pro hac vice)*
nsaharsky@mayerbrown.com
Minh Nguyen-Dang, SBN 312031
mnguyen-dang@mayerbrown.com
1999 K Street NW
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Michael A. Olsen, ILBN 6237807
*(pro hac vice)*
molsen@mayerbrown.com
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/ Rebecca S. Roberts*
Thomas H. Bienert, Jr., SBN 135311
tbienert@bklwlaw.com
Rebecca S. Roberts, SBN 225757
rroberts@bklwlaw.com
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*Attorneys for Veolia Water West Operating Services, Inc. and Veolia Water North America-West, LLC*