UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VON BARON PARTLOW, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VEOLIA WATER WEST OPERATING SERVICES, INC., et al.,<br><br>Defendants. | Case No.: 3:24-cv-2162-JES-VET<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES; and**<br><br>**(2) DENYING MOTION TO REMAND**<br><br>**[ECF Nos. 43, 46]** |

Pending before the Court is Plaintiffs' Motion to Remand. ECF No. 43. Defendants filed an opposition, and an accompanying motion to exceed the page limit for their opposition brief. ECF Nos. 45, 46. The Court **GRANTS** the motion to exceed page limits. ECF No. 46. Plaintiffs then filed a reply. ECF No. 47. On September 10, 2025, the Court held a hearing on the motion and took the matter under submission. ECF No. 51. After due consideration and for the reasons discussed below, the Court **DENIES** Plaintiffs' motion to remand.

//

//

//

1

## I.   BACKGROUND

### A.   Procedural Posture of Cases

This case is one of several related cases brought by various plaintiff groups against Defendants Veolia Water West Operating Services, Inc. and Veolia Water North America West, LLC (collectively, "Veolia"). Each of these cases center around pollutants that have been allegedly released into the Tijuana River Estuary and Pacific Ocean by Veolia's operation of the South Bay International Water Treatment Plant, located in San Ysidro, California.

The first of these cases was brought by two non-profit organizations, San Diego Coastkeeper and Coastal Environmental Rights Foundation, against both Veolia and the United States International Boundary and Water Commission ("USIBWC"). *San Diego Coastkeeper et al. v. United States International Boundary and Water Commission et al.*, Case No. 24-cv-663-JES-VET. The second case was brought by several plaintiffs who are residents of, work in, or rent or own property in areas allegedly affected by the contamination, against Veolia and Mark Wippler, a plant supervisor employed by Veolia. *Havens et al. v. Veolia Water West Operating Services, Inc.*, Case No. 25-cv-1259-JES-VET ("*Havens* Action"). The third case is brought by the Coronado Unified School District against Veolia and Mr. Wippler. *Coronado Unified School District v. Veolia Water West Operating Services, Inc.*, Case No. 25-cv-1513-JES-VET ("*Coronado* Action"). The fourth case is also brought by plaintiffs who are residents of an affected area, Imperial Beach, against Veolia and the USIBWC. *Harrison et al. v. Veolia Water West Operating Services, Inc. et al.*, Case No. 24-cv-1584-JES-VET. The fifth and last case is another case brought by residents of Imperial Beach against Veolia and Mr. Wippler. *Partlow et al. v. Veolia Water West Operating Services, Inc. et al*., Case No. 24-cv-2162 ("*Partlow* Action").

These cases have been filed in or removed to this Court at different times and do not all name the same defendants. Thus, some of the cases sit at different procedural postures. Currently pending in the *Havens*, *Coronado*, and *Partlow* actions are motions to remand

filed by the respective plaintiffs. These motions are raised on similar grounds, so the Court will address the common issues in one order.

### B.    Factual Background[1]

The USIBWC owns the South Bay International Wastewater Treatment Plant ("SBIWTP"). *Havens* Action, ECF No. 1-2 ¶ 22. The SBIWTP treats sewage that originates from Tijuana, Mexico, and discharges the treated water into the Pacific Ocean at the South Bay Ocean Outfall. *Id.* ¶ 23. The purpose of the plant was to deal with wastewater issues that contaminated the Tijuana River Estuary and into the Pacific Ocean. *Id.* Plaintiffs allege that the USIBWC has contracted with Veolia to operate, manage, and maintain the plant. *Id.* ¶ 28.

The San Diego Regional Quality Control Water Board ("San Diego Water Board") is the administrative agency that issues permits for the operation of the SBIWTP. *Id.* ¶ 24. National Pollutant Discharge Elimination Permits ("NPDES Permits") dictate the amount of pollutants the plant is permitted to discharge. *Id.* ¶¶ 24-25. Plaintiffs allege that through the years, Defendants have either cause or failed to prevent numerous discharge incidents that resulted in sewage being dumped into the Tijuana River, and have been issued numerous violations by the San Diego Water Board for failing to comply with the relevant NPDES permits. *Id.* ¶¶ 29-30, 34. As the entity placed in charge to operate and manage the SBIWTP, Plaintiffs alleged that Veolia has failed to comply with its contract with the USIBWC and failed to operate and manage the plant with due care. *Id.* ¶ 31.

Due to the discharges, Plaintiffs allege that they have suffered injuries due to both noxious fumes and odors, as well as contaminated water, that they have encountered in their communities. *Id.* ¶ 35. The *Havens* plaintiffs assert causes of action for negligence, negligence per se, public nuisance, private nuisance, trespass, and strict liability for

---

[1] Because the relevant facts are the same across the *Havens*, *Coronado*, and *Partlow* actions, the Court will address them collectively here and cite to the *Havens* complaint only. Similarly, the Court will also cite to the Notice of Removal and briefing on the motion to remand in the *Havens* action only, but will highlight any differences that exist in the *Coronado* and *Partlow* actions.

ultrahazardous activities. *Id.* ¶¶ 42-101. The *Partlow* plaintiffs assert causes of action for negligence, public nuisance, private nuisance, trespass, battery, and violation of California Health and Safety Code § 5411. *Partlow* Action, ECF No. 1-2 ¶¶ 33-80. The *Coronado* plaintiffs assert causes of action for negligence, negligence per se, public nuisance, trespass, and strict liability for ultrahazardous activities. *Coronado* Action, ECF No. 1-2 ¶¶ 44-121.

### C.   Basis for Removal

Each of the *Havens*, *Partlow*, and *Coronado* actions were filed initially in state court, and have since been removed to this Court. In Defendants' Notice of Removal in this action, they raise two arguments for why removal is proper. First, they contend that removal is proper under federal officer removal pursuant to 28 U.S.C. § 1442(a)(1). ECF No. 1 at 16-26. Second, they also contend that removal is proper under diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant Wippler, whose presence destroys diversity, is a fraudulently joined defendant.[2] *Id.* at 27-29. Because the provisions for removal differ on these basis, the Court will address each separately.

## II.   FEDERAL OFFICER REMOVAL

### A.   Legal Standards

Title 28 U.S.C. § 1442(a)(1) permits removal of a civil action to federal court by "any person acting under" an officer of the United States "for or relating to any act under color of such office." In order to remove under this provision, Defendants must show: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). While removal statutes are generally strictly construed against removal, § 1442 has instead been interpreted "broadly in favor of removal." *Id.* at 1252

---

[2] The removal issue raised by inclusion of Mr. Wippler as a defendant is only relevant to the *Havens* and *Partlow* actions, and not the *Coronado* action.

(reviewing Supreme Court and Congressional history supporting this inference); *see Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("[T]he right of removal is absolute for conduct performed under color of federal office.").

In order to remove a case, 28 U.S.C. § 1446 requires Defendants to provide "a short and plain statement of the grounds for removal." Under this standard, it is not enough to allege legal conclusions, but rather Defendants must allege "underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). When a plaintiff then seeks to challenge the basis of the removal, the challenge may be brought as either a facial or factual attack. *Id.* A facial attack is one where the plaintiff "accepts the truth of [the] allegations but asserts that 'they are insufficient on their face to invoke federal jurisdiction.'" *Id.* at 1121. The Court would then accept the allegations as true and draw all inferences in favor of defendants to determine if the allegations are sufficient to confer jurisdiction. *Id.* Conversely, a factual attack "contests the truth of [the] allegations, usually by introducing evidence outside the pleadings." *Id.* In such cases, defendants must then prove by a preponderance of the evidence that each of the jurisdictional requirements have been met. *Id.* The Court may resolve factual disputes as to any jurisdictional issues turning on the facts. *Id.*

### B.    Veolia is a "person"

The first requirement to remove under § 1442 is that the defendant must be a 'person' within the meaning of the statute. Veolia alleges that it is a "person" under the statute. ECF No. 1 ¶ 31 (citing *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) ("[C]orporations are 'persons' under § 1442(a)(1).")). Plaintiffs do not contest this requirement. *See* ECF No. 19 at 12. Thus, the Court finds that this requirement has been sufficiently shown.

### C.    Causal Nexus

The second requirement to remove under § 1442 is that the defendant must show that (1) the actions at issue were taken under a federal officer's direction and (2) there is a causal relationship between the actions taken and the plaintiff's claims. *Goncalves*, 865

3:24-cv-2162-JES-VET

F.3d at 1245. The *Goncalves* court separated this inquiry into these two prongs, noting that the threshold to meet the second prong with regard to the causal connection is "quite low." *Id.*

Before delving into this analysis, the Court will first discuss what "actions" by Veolia are at issue here. Generally, Plaintiffs allege in their complaint that the variety of harms they suffered are due to "extensive and far-reaching" "actions and inactions" by Veolia. ECF No. 1-2 ¶ 7. For example, these actions/inactions include "decades of neglect, deferred maintenance, and other improper actions." *Id.* ¶ 6. It also includes "routine discharge" of pollutants into the affected waters "through leaks and spills from their canyon collectors and other infrastructure" that "violate [the] NPDES Permit." *Id.* ¶ 7. Further in the complaint, Plaintiffs also alleged that since 2018, "the IWBC and Veolia have caused, or failed to prevent, over 500 illegal discharge incidents from SBIWTP, resulting in over a billion gallons of raw sewage being dumped into the Tijuana River that flows into South San Diego." *Id.* ¶ 29. As a more specific example, Plaintiffs also identified that on July 29, 2024, the USIBWC was issued 150 complaints about odors and alleged that the investigation attributed the issue to the Hollister Waste Pump Station, which was operated by Defendants and "improperly maintained and caused the odors." *Id.* ¶ 20.

### i.   Causation Prong

Because of the low bar on this prong, the *Goncalves* court addressed this prong first in its analysis, and the Court will follow suit here. In their Notice of Removal, Veolia states that Plaintiffs allege their mismanagement of the SBIWTP (through actions and omissions cited in the complaint) caused the discharge of untreated sewage into the affected waters, which in turn caused the variety of harms alleged. ECF No. 1 ¶ 45. Plaintiffs do not refute causation specifically in their motion to remand. *See generally* ECF No. 19 at 13-15. While they do refute whether Veolia had control over the actions at issue or whether the actions were performed at the direction of the federal officer—here, the USIBWC—Plaintiffs do not challenge that the actions caused the underlying harm they are suing under. Thus, the Court finds that this second causation-focused prong is met.

## ii.    "Acted Under" Prong

The primary argument Plaintiffs raise for this second requirement is that Veolia did not act under the direction of the USIBWC when taking the actions. As alleged in their complaint, they allege that "Veolia and Wippler have failed, to such an enormous degree, to comply with its contract with the [USIBWC], by failing to adequately operate, manage, and maintain the SBIWTP with due care and diligence, in convection of its contractual mandate." ECF No. 1-2 ¶ 31. In their motion, they frame Veolia's role as an independent contractor who did not act under the "direct and detailed" control of the USIBWC. ECF No. 19 at 13-14.

In the Notice of Removal, Veolia argues that it meets this requirement based on the following allegations:

- Veolia assisted the USIBWC in carrying out duties and operates under its "direct supervision, guidance, and control." ECF No. 1 ¶ 35. As evidence of this, Veolia cites to various provisions in the contract:

    o "the [Plant] is operated under the authority of . . . USIBWC." ECF No. 1-2, Ex. 4 at C-1;
    o Veolia must follow the "[r]ules, regulations, directions, and requirements . . . issued by the USIBWC authorities." *Id.* at § H.02(b);
    o Veolia personnel cannot "[b]e placed in a position of command, supervision, administration or control over USIBWC personnel." *Id.* at § H.02(a)(1)(ii);
    o USIBWC has discretion to issue stop-work orders to Veolia. *Id.* at § 52.242-15;
    o USIBWC has final authority to approve Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, and the Plant's safety plan and emergency preparedness plan. *Id.* at C-5, C-10, C-11, C-12, C-28;
    o All Veolia "personnel [are] . . . required to obtain access authorization from the USIBWC . . . prior to entering the [Plant] and facilities." *Id.* at C-8;
    o Veolia "shall not divert or otherwise replace any key personnel without the written consent of the [USIBWC's] Contracting Officer" and "[t]he Contracting Officer's decision in regards to replacement . . . shall be final." *Id.* at C-10;
    o USIBWC limits the maximum number of hours per day that Veolia personnel can work. *Id.* at C-11;

3:24-cv-2162-JES-VET

- o USIBWC may "require" that Veolia "remove from the work place any employee the [USIBWC] deems incompetent, careless, a conflict of interest or otherwise objectionable." *Id.* at C-12;
- o USIBWC provided Veolia with a "document [that] covers the Sequence of Operation (SOO) in place to run and maintain the plant." ECF No. 1-2, Ex. 6 at 1. Among other specific procedures, this document sets out the "standard operating procedure for the start-up and shutdown of the Headworks for the . . . Plant." *Id.* at 14.

- Veolia's responsibilities under the contract includes "providing labor, material, and other resources that are needed for Plant operations and maintenance" and carries out those responsibilities through "day-to-day planning and administration, including influent and effluent sampling and laboratory testing; equipment and vehicle operation and maintenance; system monitoring and operation; data recording and reporting; capital improvements; housekeeping; grounds maintenance; supplying consumables including chemicals; and other services related to the operation and maintenance of the Plant." ECF No. 1 ¶ 36.

- Under the contract, Veolia's scope of work includes any "repairs, refurbishments, replacements or upgrades under $100,000" whereas USIBWC has final authority to approve "major repairs, refurbishments, replacements, and upgrades in future years." ECF No. 1-2, Ex. 4 at C-17.

- USIBWC is the "ultimate decisionmaker for Plant operations" and its commissioner is "intimately involved in . . . every single activity related to" permit compliance and USIBWC does "not delegat[e] this" responsibility." Further, its area operations manage "supervise[s] . . . operations and maintenance activities . . . which includes overseeing and managing the Operation & Maintenance contract for [the Plant] and ensuring compliance with the [permit]." ECF No. 1 ¶ 37.

- Regarding the canyon collectors, Veolia states that it inspects them daily and relays its observations to USIBWC via a template provided by USIBWC. ECF No. 1-2, Ex. 5. USIBWC can determine when it is necessary to shut off water flow from the canyon collectors in order to prevent damage to the Plant from unforeseen events like excessive sediment flows from Mexico. ECF No. 1-2, Ex. 7. Veolia alleges that it "defers to USIBWC on all decisions relevant to water discharge and permit compliance."

- As an exemplar, Junction Box-1 is a gated concrete structure that can shut off or redecrease flows to SBIWTP from the International Collector. ECF No. 1 ¶ 43. Veolia submits that the gate was welded by USIBWC's decision when it became structurally unsound, and USIBWC controlled and approved of the contract that

3:24-cv-2162-JES-VET

eventually fixed it. *Id.* While it was non-operational, Veolia states that SBIWTP could not control the volume of influent flows. *Id.*

In their motion to remand, Plaintiffs attack this characterization of the relationship. Plaintiffs argue that Veolia is an independent contractor and has day-to-day control over the operation and maintenance of SBIWTP. ECF No. 19 at 14. To support this contention, Plaintiffs cite to the following:

- Contractual provision that there is no employer-employee relationship between the USIBWC and Veolia; (ECF No. 1-2 at 289)

- Veolia personnel cannot be appointed, employed, or supervised by a federal officer; cannot be placed in a position of command, supervision, administration or control over government personnel; cannot be part of a government operation; and cannot be used for avoiding manpower ceilings or other governmental personnel rules or regulations; (*Id.*)

- Veolia personnel cannot exercise personal judgment or discretion on behalf of the government only on behalf of Veolia; (*Id.*)

- Veolia provides full service operation and maintenance including: "providing day-to-day contract management, planning, supervision, administration, personnel; plant influent and effluent sampling and laboratory testing; equipment operation, maintenance, servicing, repair and replacement; system monitoring and operation; data recording and reporting; markups of plant as builts; management and reporting; quality control; capital improvements; vehicles and vehicle fleet management, operation, maintenance and repair; housekeeping; grounds maintenance; consumable supplies including chemicals, and other services related to the operation and maintenance of the SBIWTP." (*Id.* at 300)

- Veolia supplies chemicals and equipment for the operation and maintenance of the SBIWTP at its own cost. (*Id.* at 315, 320).

Plaintiffs' argument focuses on the independent contractor nature of the relationship between Veolia and USIBWC, particularly equating the relationship to the one in *Cabalce v. Thomas E. Blanchard & Associates, Inc.*, 797 F.3d 720 (9th Cir. 2015). ECF No. 19 at 15. The Court agrees that the contract shows that Veolia is to be considered an independent contractor, but this is only one factor to be considered. Confirming the approach taken by the lower court, the *Cabalce* court stated: "Rather than holding that [defendant] was

9

precluded *as a matter of law* from seeking federal officer removal as an independent contractor, the district court considered [the] independent contractor status" along with other evidence in making its determination. 797 F.3d at 729 (emphasis added). Thus, the contractual provisions highlighted by Plaintiffs are relevant to the inquiry, but are not conclusive.

Indeed, the Ninth Circuit explained that there can be two different kinds of independent contractors: "As we read the cases, the key difference between *Goncalves* and *Cabalce* is a crucial distinction between independent contractors that are agents and independent contractors that are instead non-agent service providers." *DeFiore v. SOC LLC*, 85 F.4th 546, 555 (9th Cir. 2023) (noting that the term "independent contractor" is "equivocal in meaning"). The *DeFiore* court characterized the relationship in *Cabalce* to be the latter type—where the contract provided for some "general oversight" by the government but delegated to the contractor specific control and command. *Id.* In contrast, for the former type of "agent" independent contractor relationships, the court looked to the common-law agency relationship and approved of the language used in *Goncalves*:

> For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." [*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 at 152]. The "relationship typically involves 'subjection, guidance, or control,' " but it must go beyond simply complying with the law, even if the laws are "highly detailed" and thus leave the entity "highly regulated." *Id.* at 151–53 (citation omitted). Thus, "[t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law and help[ ] officers fulfill other basic governmental tasks." *Id.* at 153.

*Goncalves*, 865 F.3d at 1245. Thus, in *Goncalves*, the court found the contractor to be an agent due to the interconnectedness between the government and contractors who were administrating the plan where the government agency remained "responsible for the overall administration of the program" but shared the "day-to-day operating responsibility" with the contractor. *Id.* at 1246 (citation and quotation marks omitted).

The Court finds that this case lies between *Goncalves* and *Cabalce*, but provisions in the contract indicate more of an agency and control relationship more similar to *Goncalves*. In addition to the provisions highlighted by Veolia, for example, the contract provides that Veolia as the contractor shall develop a Workplan, to be based on the Operations and Maintenance Manuals for the plant and related facilities, and that this work plan would be the basis for a Facility Management Plan for the plaint. ECF No. 1-2 at 304. The Workplan would be implemented by Veolia but only after approval by the Contracting Officer's Representative ("COR"). *Id.* The contract itself has many provisions in it that place requirements upon Veolia. *See, e.g.*, *Id.* at 305-06 (providing that Veolia must conduct risk assessments and provide strategies which must be presented to the COR, which shall submit comments back, upon which the plan would be finalized); *id.* at 311-314 (providing a list of "Operations Management" tasks that Veolia is required to do); *id.* at 317-319 (providing a list of "Maintenance Management" tasks that Veolia is required to do); *id.* at 320-325 (providing requirements related to regulatory agency coordination and reporting). Though these provisions place a lot of the tasks themselves on Veolia to perform, they are indicative that Veolia does not operate with unfettered discretion as an independent contractor.[3] Rather the operation of the SBIWTP, which is governed by the NPDES and other regulatory oversight, exists under some level of control and oversight by the USIBWC as the responsible entity.

Furthermore, Plaintiffs allege that their claims arise from a series of "actions and inactions" that have occurred over a period of years. Some of these arise from neglect and deferred maintenance. ECF No. 1-2 ¶ 6. Others arise from discharge of pollutants through "leaks and spills" from the canyon collectors and infrastructure. *Id.* ¶ 7. With such a broad definition of "acts" that may have caused the injuries claimed by Plaintiffs, the Court finds

---

[3] In their briefing as well as during oral arguments, the parties disputed whether the attack on jurisdiction was a facial or factual attack. The Court finds that under either, Veolia has sufficiently alleged the jurisdictional requirement. The facts Veolia relied upon as not directly disputed; rather Plaintiffs point to other provisions in the contract.

11

3:24-cv-2162-JES-VET

that there have been acts alleged that can be attributed to control of the USIBWC. For example, in their Notice of Removal, Veolia gives the following two examples. First, regarding canyon collectors, Veolia alleged that it inspects them daily and submits a report to the USIBWC via a template the USIBWC provided. ECF No. 1, Ex. 5. Veolia further alleges that the final decision to shut off water flow from the canyon collectors is made by the USIBWC. *Id.*, Ex. 7 (email exchange between Veolia and USIBWC where Veolia seeks permission to shut off the Smuggler's canyon collector due to heavy rainfall). These allegations are not directly refuted by Plaintiffs in their briefing. Second, as an example, Veolia gave another example of when Junction Box-1, which controls flows to the SBIWTP from the International Collection, was shut off based on a decision from the USIBWC, and Veolia alleges that during that time it was shut off, it was unable to control influent flows. ECF No. 1 ¶ 43. This allegation was also not refuted.

Accordingly, keeping in mind that courts have been instructed to apply this provision "broadly in favor of removal," the Court finds therefore that Veolia has sufficiently alleged facts regarding its relationship with USIBWC to meet this requirement.

### D.    Colorable Federal Defense

The third and final requirement to remove under § 1442 is that the defendant must show that it can assert a "colorable federal defense." *Durham*, 445 F.3d at 1251. This requirement supplies the "federal element" under which the defense to the action arises. *DeFiore*, 85 F.4th at 558. The scope at the motion to remand step is "only whether the defendant advanced a colorable federal defense, 'not whether [the] defense will be successful.'" *Id.* (citation omitted); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("The officer need not win his case before he can have it removed.").

In its Notice of Removal, Veolia alleges that it can assert two colorable federal defenses: (1) derivative sovereign immunity; and (2) foreign affairs preemption. ECF No. 1 ¶¶ 46-65.

//

//

12

### i.    Derivative Sovereign Immunity

Derivative sovereign immunity under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) requires the following: (1) the government's sovereign immunity has not been waived; (2) the authority to carry out the contract is validly conferred; and (3) the contractor performed the contract as directed by the government. Plaintiffs do not dispute the second element of this test, but do dispute the first and third elements.

### a.    Waiver

As to the first requirement, Veolia alleges that the USIBWC is a federal agency that is generally immune from liability, unless it has been waived. ECF No. 1 ¶ 48. Veolia argues that it has not been waived under the Federal Torts Claims Act ("FTCA") because the FTCA's limited waiver only extends to "injury or loss of property . . . caused by the negligent or wrongful act or omission" of a federal employee or agent "acting within the scope of his office or employment" and is subject to exceptions. *Id.* ¶ 49. One of these exceptions is the discretionary-function exception, where the government has *not* waived immunity for negligent or wrongful acts that are discretionary and not "governed by a mandatory statute, policy, or regulation." *Id.*

In order to show that the discretionary-function exception applies, the governmental conduct: (1) must be "discretionary in nature" and involve "an element of judgment or choice;" and (2) if there is discretion, the acts must be "susceptible" to analysis involving social, economic, or political policy. *United States v. Gaubert*, 499 U.S. 315, 322 (1991).

Veolia alleges that this exception applies because the USIBWC has wide discretion to operate and manage the SBIWTP under the relevant governing federal sources. ECF No. 1 ¶ 50. Specifically, Veolia alleges that the 1944 Treaty Respecting Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande between the United States and Mexico granted discretion to the USIBWC discretion in its water treatment to promote the economy, health, environment, and water quality in and around San Diego. *Id.* Further, Veolia alleges that the NPDES permits do not limit this discretion, providing for the USIBWC to minimize or prevent discharge affecting human health or environment, and

13

for the USIBWC to divert waste streams from plant facilities if needed to prevent loss of life, personal injury, or severe property damage. *Id.* ¶ 52.

Plaintiffs argue that Veolia fails on this element because it has not provided any evidence that the USIBWC was acting within its discretion in any decision or act that led to Plaintiff's claimed damages. ECF No. 19 at 16-17. Veolia counters that it does not have to produce evidence at this stage of the proceedings, and because Plaintiffs do not counter the allegations Veolia made in their notice of removal, the court should credit their allegations as true. ECF No. 22 at 22-23.

The Court finds that Veolia's allegations are sufficient to show a possible "colorable" defense on this ground. As to whether the conduct is discretionary, Plaintiffs have defined the conduct broadly as encompassing maintenance and operation of the SWIBTP. Veolia has cited to the Treaty and the NPDES permits as federal sources governing the conduct, and sufficiently alleged that these federal sources do not provide a specific mandate or course of action Veolia must follow. As to whether such discretionary conduct must be "susceptible" to analysis involving social, economic, or political policy, Veolia has cited to mandates in the federal sources to promote the economy, health, environment, water quality, and to prevent loss of life, personal injury, or severe property damage.

Plaintiffs do state in their motion that evidence is contrary to the allegations Veolia makes, but the Court is not persuaded by their arguments. ECF No. 19 at 17. First, Plaintiffs state that the contract puts the maintenance and operation of the plant in the discretion of Veolia, not the USIBWC. *Id.* However, this argument focuses on who has the discretion between Veolia and USIBWC, but not whether the conduct itself is "discretionary" under the federal sources governing the conduct—which is the type of "discretion" on which the discretionary-function exception is focused. Second, Plaintiffs state that the notices of violations for discharges are also evidence that the acts were not within discretionary functions. *Id.* Again, with how broadly the "acts" have been defined here, the Court does not read the complaint to limit acts to only those that resulted in violation notices. The

3:24-cv-2162-JES-VET

Court finds that Veolia has sufficiently alleged this requirement under the "colorable" defense standard.

### b.    Direction of government

As to the third requirement, Veolia alleges that it has operated the SWIBTP "in accordance with USIBWC's specific guidance and direction under the terms of the contract" and that the USIBWC has the ultimate authority over all the activities at the plant. ECF No. 1 ¶ 53. Plaintiffs disagree with this allegation, stating instead that the contract shows that day-to-day operation of the SWIBTP falls within Veolia's discretion. ECF No. 12 at 17. However, for the reasons the Court has outlined above, the Court does not find evidence to be conclusive on this, particularly considering how broad the "acts" causing the damages here have been defined by Plaintiffs in the complaint.

Thus, overall, the Court finds that Veolia has sufficiently alleged a "colorable defense" at this stage of the proceedings based on derivative sovereign immunity.

### ii.    Foreign Affairs Preemption

Because the Court finds above that Veolia has sufficiently asserted a colorable federal defense through derivative sovereign immunity, the Court declines to address this alternative ground and does not address the merits of this issue.[4]

\* \* \*

Accordingly, based on the foregoing, the Court concludes that Veolia has sufficiently met the requirements for removal under federal officer jurisdiction, and therefore, this Court has subject matter jurisdiction over the matter.

//

//

---

[4] The *Partlow* Plaintiffs raise one further issue in their motion to remand regarding timeliness. *Partlow* Action, ECF No. 43 at 14-19. However, when the Court denied the *Partlow* Plaintiffs' first motion to dismiss, it granted Defendants an opportunity to file an Amended Notice of Removal. *Partlow* Action, ECF No. 40. Further, this timeliness argument focuses on foreign affairs preemption, which the Court does not rely upon in this order as a basis for its decision. Thus, the Court rejects the untimeliness argument.

3:24-cv-2162-JES-VET

## III.    DIVERSITY REMOVAL

Veolia asserts another ground for removal based on diversity jurisdiction, arguing that the defendant who destroys complete diversity was fraudulently joined. ECF No. 1 ¶¶ 66-75. Because the Court finds sufficient subject matter jurisdiction based on federal officer removal as stated above, the Court declines to reach this alternative ground for removal.

## IV.    CONCLUSION

After due consideration and for the reasons discussed above, the Court **DENIES** Plaintiffs' motion to remand. Defendants shall answer or otherwise respond to the complaint **within 30 days of this order**.

**IT IS SO ORDERED.**

Dated: March 27, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge